UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

|  |  |  |
|---|---|---|
|  | : | CIVIL ACTION NO. |
| BRIAN JOSEPH GREF, | : | 1:20-cv-05589-GBD-DCF |
|  | : |  |
| Plaintiff, | : | SECOND AMENDED |
| -against- | : | COMPLAINT |
|  | : |  |
|  | : |  |
| AMERICAN INTERNATIONAL INDUSTRIES, | : |  |
|  *individually and as successor-in-interest for the* | : |  |
|  CLUBMAN BRAND, and to THE NESLEMUR | : |  |
|  COMPANY and PINAUD COMPANY; | : |  |
| BRENNTAG NORTH AMERICA; | : |  |
| BRENNTAG SPECIALTIES, INC*., as successor-in-* | *:* |  |
|  *interest to* MINERAL PIGMENT SOLUTIONS, INC., | : |  |
|  *as successor-in-interest to* WHITTAKER CLARK | : |  |
|  & DANIELS, INC.; | : |  |
| COLGATE-PALMOLIVE COMPANY *as successor-in* | : |  |
| *Interest to* THE MENNEN COMPANY; | : |  |
| CYPRUS AMAX MINERALS COMPANY, *sued* | : |  |
|  *individually, doing business as, and as successor to* | : |  |
|  AMERICAN TALC COMPANY, METROPOLITAN | : |  |
|  TALC CO. INC., and CHARLES MATHIEU, INC and | : |  |
|  SIERRA TALC COMPANY and UNITED TALC | : |  |
|  COMPANY; | : |  |
| CYPRUS MINES CORPORATION *individually,* | : |  |
|  *doing business as, and as successor-in-interest to* | : |  |
|  AMERICAN TALC COMPANY, | : |  |
|  METROPOLITAN TALC CO. INC., CHARLES | : |  |
|  MATHIEU INC., CYPRUS INDUSTRIAL | : |  |
|  MINERALS COMPANY, WINDSOR | : |  |
|  MINERALS INC., and VERMONT TALC; | : |  |
| DANA CLASSIC FRAGRANCES, INC.; | : |  |
| IMG HOLDINGS INC.; | : |  |
| JOHNSON & JOHNSON; | : |  |
| JOHNSON & JOHNSON CONSUMER COMPANIES, | : |  |
|  INC.; | : |  |
| KOLMAR LABORATORIES, INC.; | : |  |
| LUZENAC AMERICA INC.,; | : |  |
| PATRIARCH PARTNERS, LLC; | : |  |
| SHULTON, INC.; | : |  |
| THE NESLEMUR COMPANY; | : |  |
| THE PROCTER & GAMBLE MANUFACTURING | : |  |
|  COMPANY *as successor-in-interest to* SHULTON INC.; | : |  |

WHITTAKER CLARK & DANIELS, INC.;                    :
WHITTAKER CLARK & DANIELS, INC.                     :
  *Individually and as successor to* CHARLES MATHIEU,  :
  INC. and METROPOLITAN TALC CO.;                  :
JOHN DOE 1 through JOHN DOE 75 (fictitious),        :
                                                                     :
                           Defendants.            :
-----------------------------------------------------------------------X

       Plaintiff's complaint of the Defendants, by SIMMONS HANLY CONROY, his attorneys,

respectfully alleges, upon information and belief, at all times hereinafter mentioned, as follows:

## NATURE OF THE ACTION

       1.    Plaintiff BRIAN JOSEPH GREF resides at 10263 Whispering Forest Drive,

Apartment 716, Jacksonville, FL 32257. Plaintiff Brian Gref was previously employed as, *inter*

*alia,* a security guard, desk clerk, service technician, call center operator, medical combat

technician, and presently employed as a blood technician. During his daily use of cosmetic talc

products, Plaintiff Brian Gref was exposed to and came in contact with Defendants' asbestos-

containing talc products from approximately 1982 until 2019. Plaintiff purchased, used, and was

exposed to asbestos from the use of Defendants' talcum powder in the United States, including in

but not limited to, New York where he stayed for an extended period of time during the relevant

time period. Plaintiff Brian Gref would apply and/or be exposed to the Defendants' Asbestos

Contaminated Products at least once and often twice per day during the relevant time period as he

used Defendants Asbestos Contaminated Products as part of his daily hygiene routine. As a direct

and proximate result of his inhalation and ingestion of asbestos dust particles and fibers from

Defendants' asbestos and asbestos-contaminated products, Plaintiff Brian Gref developed

mesothelioma on or about November 27, 2019.

       2.    This is a product liability action arising out of Defendants' negligent design,

manufacture and sale of talc and talcum powder-based products which were contaminated

with asbestos. Plaintiff alleges that BRIAN GREF used and was exposed to AMERICAN INTERNATIONAL INDUSTRIES, *individually and as successor-in-interest for the* CLUBMAN BRAND, and to THE NESLEMUR COMPANY and PINAUD COMPANY (hereinafter "CLUBMAN"), DANA CLASSIC FRAGRANCES, INC. (hereinafter "ENGLISH LEATHER"), COLGATE-PALMOLIVE COMPANY *as successor-in-interest to* THE MENNEN COMPANY (hereinafter "MENNEN"), THE PROCTER & GAMBLE MANUFACTURING COMPANY *as successor-in-interest to* SHULTON INC. (hereinafter "OLD SPICE"), SHULTON INC. (hereinafter "OLD SPICE II"), and THE NESLEMUR COMPANY (hereinafter "NESLEMUR") talcum powder products in the United States, which were contaminated with asbestos for decades.

3.      As a result of his exposure to asbestos-contaminated talc and/or talcum powder products that Defendants designed, mined, milled, managed, manufactured, supplied, sold and/or distributed, Plaintiff developed mesothelioma. In addition, Plaintiff alleges that Defendants defectively manufactured, designed, tested, marketed and produced their talcum powder products, when they knew or should have known of an alternative design, manufacturing process and testing process which would eliminated the potential for asbestos contamination of their products.

4.      Defendants CLUBMAN, ENGLISH LEATHER, MENNEN, NESLEMUR, OLD SPICE I and II, KOLMAR LABORATORIES, INC. (hereinafter "KOLMAR"), BRENNTAG NORTH AMERICA, Defendant BRENNTAG SPECIALTIES, INC.*, as successor-in-interest to* MINERAL PIGMENT SOLUTIONS, INC., *as successor-in-interest to* WHITAKER CLARK & DANIELS, INC. (hereinafter "BRENNTAG"), CYPRUS AMAX MINERALS COMPANY, *sued individually, doing business as, and as successor to* AMERICAN TALC COMPANY,

METROPOLITAN TALC CO. INC., and CHARLES MATHIEU, INC and SIERRA TALC COMPANY and UNITED TALC COMPANY (hereinafter "CAMC"), CYPRUS MINES CORPORATION *individually, doing business as, and as successor-in-interest to* AMERICAN TALC COMPANY, METROPOLITAN TALC CO. INC., CHARLES MATHIEU INC., CYPRUS INDUSTRIAL MINERALS COMPANY, WINDSOR MINERALS INC., and VERMONT TALC (hereinafter "CMC"), DANA CLASSIC FRAGRANCES, INC. (hereinafter "DANA" or "ENGLISH LEATHER"), LUZENAC AMERICA INC. (hereinafter "LUZENAC"), WHITTAKER CLARK & DANIELS, INC. (hereinafter "WCD I"), and WHITTAKER CLARK & DANIELS, INC., *Individually and as successor to* CHARLES MATHIEU, INC. and METROPOLITAN TALC CO. (hereinafter "WCD II") were engaged in mining, milling, producing, processing, bagging, designing, manufacturing, marketing, supplying, delivering, distributing, using, purchasing, importing, exporting, compounding, selling and/or otherwise placing into the stream of commerce: (i) raw talc and/or talc ore contaminated with asbestos fibers of various kinds and grades; and/or (ii) asbestos- contaminated talcum powder products, specifically CLUBMAN, ENGLISH LEATHER, MENNEN, NESLEMUR, and OLD SPICE I and II talc powder (hereinafter referred to by name or as "Asbestos Contaminated Products").

5.     Upon information belief, Defendants IMG HOLDINGS INC. (hereinafter "IMG" and PATRIARCH PARTNERS, LLC (hereinafter "PATRIARCH") engaged in the management, supply, capitalization, distribution, and/or otherwise placing in the stream of commerce asbestos-containing talcum powder manufactured by ENGLISH LEATHER.

6.     Brian Gref personally used CLUBMAN, ENGLISH LEATHER, MENNEN, NESLEMUR, and OLD SPICE I and II talcum powder as part of his daily hygiene routine from approximately 1995 until 2019. In addition, Plaintiff's parents applied, as designed and intended,

CLUBMAN, ENGLISH LEATHER, and NESLEMUR talcum powder to Brian Gref from the time of his birth in 1982 until approximately 1987. Plaintiff's parents applied Defendants' talcum powder multiple times per day after they changed his diapers and bathed him, and for several years after Plaintiff stopped wearing diapers to prevent rashes and general skin irritation.

7.      As a result of the above activities, Plaintiff was exposed to asbestos dust and asbestos fibers through the normal and anticipated use of said Asbestos Contaminated Products.

8.      During the relevant time period, Plaintiff was exposed – directly and/or indirectly-on numerous occasions to talcum powder products which were mined, produced, processed, designed, manufactured, marketed, supplied, delivered, distributed, used, purchased, tested, specified, controlled, imported, exported, compounded, sold or otherwise placed in the stream of commerce by Defendants.

9.      Plaintiff was unavoidably exposed to, inhaled and ingested asbestos fibers contained within and emanating from the Defendants' Asbestos Contaminated Products and/or as a result of Defendants' actions, omissions and/or failures to act.

10.      At all relevant times, Defendants knew or should have known of the health hazards associated with exposure to asbestos.

11.      At all relevant times, Defendants knew or should have known that the Asbestos Contaminated Products that they mined, milled, designed, manufactured, supplied, sold and/or distributed were and are contaminated with asbestos fibers.

12.      As a direct and proximate result of Plaintiff's exposure to-and consequential inhalation and ingestion of asbestos fibers and dust, as contained within and emanating from the Defendants' Asbestos Contaminated Products or otherwise as a result of Defendants' actions or failures to act, Plaintiff developed a progressive, debilitating asbestos-related disease, specifically

mesothelioma, and consequential damages, including, without limitation, pain and suffering, mental anguish, and medical expenses.

13.    Plaintiff alleges that Plaintiff's exposure to Defendants' Asbestos Contaminated Products caused or substantially contributed to his asbestos-related injuries such that the Defendants are jointly and severally liable to him for same.

## **PARTIES - DEFENDANTS**.

14.    Plaintiff Brian Gref resides at 13221 Pecky Cypress Drive, Jacksonville, FL 32223

15.    Defendant AMERICAN INTERNATIONAL INDUSTRIES, *individually and as successor-in-interest for the* CLUBMAN BRAND, and to THE NESLEMUR COMPANY and PINAUD COMPANY is a California corporation duly organized and existing under and by virtue of the laws of the State of California

16.    Defendant AMERICAN INTERNATIONAL INDUSTRIES*, individually and as successor-in-interest for the* CLUBMAN BRAND, and to THE NESLEMUR COMPANY and PINAUD COMPANY maintained its principal place of business and corporate headquarters in California.

17.    Defendant BRENNTAG NORTH AMERICA is a Delaware corporation duly organized and existing under and by virtue of the laws of the State of Delaware.

18.    Defendant BRENNTAG NORTH AMERICA maintained its principal place of business and corporate headquarters in Pennsylvania.

19.    Defendant BRENNTAG SPECIALTIES, INC., *as successor-in-interest to* MINERAL PIGMENT SOLUTIONS, INC., *as successor-in-interest to* WHITTAKER CLARK & DANIELS, INC., is a Delaware corporation duly organized and existing under and by virtue of the laws of the State of Delaware.

20.    Defendant BRENNTAG SPECIALTIES, INC., *as successor-in-interest to* MINERAL PIGMENT SOLUTIONS, INC., *as successor-in-interest to* WHITTAKER CLARK & DANIELS, INC., maintained its principal place of business and corporate headquarters in New Jersey.

21.    Defendant COLGATE-PALMOLIVE COMPANY *as successor-in-interest to* THE MENNEN COMPANY is a Delaware corporation duly organized and existing under and by virtue of the laws of the State of Delaware.

22.    Defendant COLGATE-PALMOLIVE COMPANY *as successor-in-interest to* THE MENNEN COMPANY maintained its principal place of business and corporate headquarters in New York.

23.    Defendant CYPRUS AMAX MINERALS COMPANY*, sued individually, doing business as, and as successor to* AMERICAN TALC COMPANY, METROPOLITAN TALC CO. INC and CHARLES MATHIEU, INC and SIERRA TALC COMPANY and UNITED TALC COMPANY is a Delaware corporation duly organized and existing under and by virtue of the laws of the State of Delaware.

24.    Defendant CYPRUS AMAX MINERALS COMPANY, *sued individually, doing business as, and as successor to* AMERICAN TALC COMPANY, METROPOLITAN TALC CO. INC and CHARLES MATHIEU, INC and SIERRA TALC COMPANY and UNITED TALC COMPANY maintained its principal place of business and corporate headquarters in Colorado.

25.    Defendant CYPRUS MINES CORPORATION *individually, doing business as, and as successor-in-interest to* AMERICAN TALC COMPANY, METROPOLITAN TALC CO. INC., CHARLES MATHIEU INC., CYPRUS INDUSTRIAL MINERALS COMPANY,

7

WINDSOR MINERALS INC., and VERMONT TALC is a Delaware corporation duly organized and existing under and by virtue of the laws of the State of Delaware.

26.     Defendant CYPRUS MINES CORPORATION *individually, doing business as, and as successor-in-interest to* AMERICAN TALC COMPANY, METROPOLITAN TALC CO. INC., CHARLES MATHIEU INC., CYPRUS INDUSTRIAL MINERALS COMPANY, WINDSOR MINERALS INC., and VERMONT TALC maintained its principal place of business and corporate headquarters in Arizona.

27.     Defendant DANA CLASSIC FRAGRANCES, INC. is a Delaware corporation duly organized and existing under and by virtue of the laws of the State of Delaware.

28.     Defendant DANA CLASSIC FRAGRANCES, INC. maintained its principal place of business and corporate headquarters in New Jersey.

29.     Defendant IMG HOLDINGS INC. is a Delaware corporation duly organized and existing under and by virtue of the laws of the State of Delaware.

30.     Defendant IMG HOLDINGS INC. maintained its principal place of business and corporate headquarters in Florida.

31.     Defendant KOLMAR LABORATORIES, INC. is, a Delaware corporation, duly organized and existing under and by virtue of the laws of the State of Delaware.

32.     Defendant KOLMAR LABORATORIES, INC. maintained its principal place of business in New York.

33.     Defendant LUZENAC AMERICA, INC. is a Georgia corporation duly organized and existing under and by virtue of the laws of the State of Georgia.

34.     Defendant LUZENAC AMERICA, INC. maintained its principal place of business and corporate headquarters in Georgia.

35.     Defendant PATRIARCH PARTNERS, LLC is a Delaware corporation duly organized and existing under and by virtue of the laws of the State of Delaware.

36.     Defendant PATRIARCH PARTNERS, LLC maintained its principal place of business and corporate headquarters in New York.

37.     Defendant SHULTON INC. is a New Jersey corporation duly organized and existing under and by virtue of the laws of the State of New Jersey.

38.     Defendant SHULTON INC. maintained its principal place of business and corporate headquarters in Ohio.

39.     Defendant THE NESLEMUR COMPANY is a Delaware corporation duly organized and existing under and by virtue of the laws of the State of Delaware.

40.     Defendant THE NESLEMUR COMPANY maintained its principal place of business and corporate headquarters in Delaware.

41.     Defendant THE PROCTER & GAMBLE MANUFACTURING COMPANY *as successor-in-interest to* SHULTON INC. is an Ohio corporation duly organized and existing under and by virtue of the laws of the State of Ohio.

42.     Defendant THE PROCTER & GAMBLE MANUFACTURING COMPANY *as successor-in-interest to* SHULTON INC. maintained its principal place of business and corporate headquarters in Ohio.

43.     Defendant WHITTAKER CLARK & DANIELS, INC., is a New Jersey corporation duly organized and existing under and by virtue of the laws of the State of New Jersey.

44.     Defendant WHITTAKER CLARK & DANIELS, INC. maintained its principal place of business and corporate headquarters in New Jersey.

45.     Defendant WHITTAKER CLARK & DANIELS, INC., *Individually and as successor to* CHARLES MATHIEU, INC. and METROPOLITAN TALC CO., is a New Jersey corporation duly organized and existing under and by virtue of the laws of the State of Jersey.

46.     Defendant WHITTAKER CLARK & DANIELS, INC., *Individually and as successor to* CHARLES MATHIEU, INC. and METROPOLITAN TALC CO., maintained its principal place of business and corporate headquarters in New Jersey.

47.     John Doe 1 through John Doe 50 are the fictitious names of corporations, partnerships, or other business entities or organizations whose identities are not presently known and who mined, manufactured, sold, marketed, installed, or removed asbestos or asbestos containing products which plaintiff used or to which plaintiff was exposed.

48.     John Doe 51 through John Doe 75 are the fictitious names of corporations, partnerships, or other business entities or organizations whose identities are not presently known and who are the alter ego of or are otherwise responsible for the conduct or liability of those who mined, milled, manufactured, sold, marketed, installed, or removed asbestos or asbestos containing products which plaintiff used or to which plaintiff was exposed.

49.     The term "Defendant" is used hereafter to refer to all of the entities named above.

50.     At all relevant times the Defendants have done business in this state, have transacted business in this state, have committed one or more tortuous acts within this state, and otherwise have performed acts within or without the state which have given rise to the injuries and losses hereafter described, and which subjects them to jurisdiction of the courts of this state.

## JURISDICTION AND VENUE

51.     On July 8, 2020, Plaintiff filed an asbestos-related lawsuit in New York State Supreme Court, County of New York, Index No. 190178/2020 naming the above captioned Defendants.

52.     On July 20, 2020, Defendants Johnson & Johnson and Johnson & Johnson Consumer Inc. by counsel and pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, filed a Notice of Removal to the United States District Court for the Southern District of New York.

53.     The Court has jurisdiction over each Defendant because each Defendant is either a resident and citizen of New York and/or has continuing minimum contacts with the State of New York, or is doing business and is engaged in substantial activity within New York, or has committed torts or breached warranties and committed acts or omissions in New York, at a time when solicitations or services were carried on within New York, by or on behalf of these Defendants and products, materials or things processed, serviced, managed, or manufactured by these corporate Defendants which resulted in personal injuries in locations inside and outside of the State, when they were used or consumed, in the ordinary course of trade.

54.     Consistent with the Due Process Clause of the Fifth and Fourteenth Amendments, this Court has in personal jurisdiction over each of the Defendants, because Defendant KOLMAR maintains their principal place of business in New York and Defendants are routinely present and conduct regular business in the State of New York such that requiring an appearance does not offend traditional notions of fair play and substantial justice.

55.     This Court has personal jurisdiction over the Defendants, pursuant to, and consistent with, the Constitutional requirements of Due Process in that the Defendants acting through agents or apparent agents, committed one or more of the following:

       a.   Defendants transacted business in the State of New York; and

      b.  Defendants made or performed a contract or promise substantially connected within the State of New York.

56.    At all times hereinafter mentioned, the Defendants systematically, continuously, and regularly did business in the State of New York in that it places its products in the stream of commerce with actual knowledge that its products, including the above are distributed, sold and used from and in the State of New York.

57.    At all times hereinafter mentioned the Defendants were in the business, investment, and management of, milling, designing, manufacturing, supplying, selling and/or distributing products, including the Asbestos Contaminated Products to which Plaintiff was exposed, and received substantial compensation and revenue from the sale of its Asbestos Contaminated Products in the State of New York.

58.    At all times hereinafter mentioned, the Defendants had and continue to have significant sales of, as well as marketing promotion for their talcum powder products within the State of New York, including the Asbestos Contaminated Products to which Plaintiff was exposed, and are thereby subject to the jurisdiction of this State and Court.

59.    At all times relevant, the products at issue in this case, specifically talc powders, were sold, managed, designed, specified, distributed, marketed, and directed to New York.

60.    At all times herein mentioned, the Defendants, jointly and individually, were engaged in the business of, or were successors in interest to, entities engaged in the business of designing, mining, milling, manufacturing, researching, formulating, testing, producing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, and/or advertising for sale, and selling the Asbestos Contaminated Products to which Plaintiff was exposed in New York. These products were for use by consumers such as Plaintiff and were used

and/or applied in the same condition as when the Asbestos Contaminated products left the Defendants' control and in the anticipated manner. As such, each of the Defendants are individually, as well as jointly and severally, liable to the Plaintiff for his damages.

61.     Venue is properly laid in this judicial district pursuant to 28 U.S.C. 1391(b)(2) as substantial parts of the events or omissions giving rise to the claim, namely, Defendants designed, manufactured, supplied, sold and/or distributed the Asbestos Contaminated Products, specifically talcum powders in this district.

62.     Venue also is proper under 28 U.S.C. §§ 1391(a), 1391(b)(1), 1391(b)(2), 1391(c)(1) and 1391(c)(2) because a substantial part of the events or omissions giving rise to the claim are in this judicial district.

## FACTUAL ALLEGATIONS

63.     Upon information and belief, at all times pertinent hereto, Defendants CLUBMAN, ENGLISH LEATHER, MENNEN, NESLEMUR, and OLD SPICE I and II manufactured talcum powders to which Plaintiff was exposed.

64.     Upon information and belief, at all times pertinent hereto, Defendants CLUBMAN, ENGLISH LEATHER, MENNEN, NESLEMUR, OLD SPICE I and II, BRENNTAG, CAMC, CMC, KOLMAR, LUZENAC, WCD I, and WCD II, were engaged in mining, milling, producing, processing, bagging, designing, manufacturing, marketing, supplying, delivering, distributing, using, purchasing, importing, exporting, compounding, selling and/or otherwise placing into the stream of commerce: (i) raw talc and/or talc ore contaminated with asbestos fibers of various kinds and grades; and/or (ii) asbestos- contaminated talcum powder products.

65.     Upon information and belief, at all times pertinent hereto, Defendants IMG and PATRIARCH engaged in the management, supply, capitalization, distribution, and/or otherwise

placing in the stream of commerce asbestos-containing talcum powder manufactured by DANA under the brand, trade, or manufacturer's name "ENGLISH LEATHER."

66.     Defendants committed misconduct in New York by concealing asbestos contamination, failing to warn, and marketing and selling a known dangerous product globally through its many subsidiaries.

67.     At all times relevant, Defendants developed, over-saw, controlled and performed all testing for asbestos on its finished baby powder products that were sold in New York and throughout the United States.

68.     Upon information and belief, at all times herein mentioned, Defendants CLUBMAN, ENGLISH LEATHER, MENNEN, NESLEMUR, OLD SPICE I and II, selected third party labs in the U.S. to test talcum powder that was sold throughout the United States and controlled the testing methodology, materials, and was sole recipient of the results.

69.     Upon information and belief, at all times relevant, Defendants controlled and directed all messaging and public communication, on the issue of asbestos contamination in talc from the United States.

70.     Upon information and belief, at all times herein mentioned, Plaintiff was exposed to CLUBMAN, ENGLISH LEATHER, MENNEN, NESLEMUR, and OLD SPICE I and II, talcum powder in the United States, including in but not limited to, New York, between approximately 1982 until 2019.

71.     At all times herein mentioned, the Defendants' talcum powder products as set forth above were contaminated with asbestos and asbestos fibers.

72.     Between approximately 1995 until 2019, Plaintiff personally used and applied CLUBMAN, ENGLISH LEATHER, MENNEN, NESLEMUR, and OLD SPICE I and II talcum

powder, manufactured by Defendants, as part of his daily hygiene routine. In addition, Plaintiff's parents applied, as designed and intended, CLUBMAN, ENGLISH LEATHER, and NESLEMUR talcum powder to Plaintiff Brian Gref from the time of his birth in 1982 until approximately 1987. Plaintiff's parents applied Defendants' talcum powder to Plaintiff multiple times per day after they changed his diapers and bathed him. Plaintiff's parents continued to apply Defendants' powder to Plaintiff Brian Gref for several years after he stopped wearing diapers to prevent rashes and general skin irritation.

73.     The Defendants incorporated raw talc and talc ore during the manufacturing and blending of their Asbestos Contaminated Products.

74.     The talc ore used as an ingredient in Defendants' talcum powder and sold by the Defendants was contaminated with asbestos fibers due to the location and manner in which it was mined.

75.     The normal and anticipated use and application of Defendants' Asbestos-Contaminated Products produced dangerous levels of airborne asbestos fibers which Plaintiff breathed in.

76.     As a result of his exposure to the Asbestos-Contaminated Products mined, milled, designed, manufactured, supplied, sold and/or distributed by Defendants, Plaintiff was diagnosed with mesothelioma, an aggressive, incurable and terminal cancer caused exclusively by exposure to asbestos fibers, in November of 2019.

77.     The dangers of talc and the understanding that mined talc was contaminated with asbestos can be traced back to the 1930's where a number of clinical reports indicated that talc workers were suffering from pneumoconiosis, a disease which causes symptoms similar to

asbestosis. By the 1960's talc miners had been identified as having an increased risk of lung cancer. Additionally, in the 1960's, tremolite asbestos fibers were identified in cosmetic talc products.

78.     During the 1970's, the FDA became concerned about the possibility of asbestos contamination of cosmetic talc products, and called upon the cosmetic talc industry, including the Defendants, to discuss the analytical methods they were employing to test for the presence of asbestos fibers. In 1972, Dr. Seymour Lewin of New York University, under contract with the FDA, tested 102 samples of commercial talc products, including Defendants' products, and found over 40 percent to contain asbestos fibers. These results were published in major newspapers, including the New York Times, and disseminated amongst those in the cosmetic industry, including the Defendants.

79.     In response to these findings, the FDA announced a proposed rule in the Federal Register which would require that cosmetic talc products to be at least 99.9% free of amphibole and/or chrysotile asbestos fibers, to be considered safe.

80.     In 1971 the FDA expressed concerns regarding asbestos in consumer talc products to those in the cosmetics industry, including Defendants. In response, Defendants should have: (a) directly informed consumers of these risks by including a warning label on their talc and talcum powder products; (b) instructed consumers on the safe handling, application and use of their products in order to minimize or eliminate exposure to respirable asbestos fibers; (c) utilized testing methods for their products that were precise enough to detect asbestos fibers; (d) changed talc source in their products; (e) removed talc as an ingredient and incorporated a reasonable alternative design, such as corn starch or mica (f) removed their talc products from the stream of commerce as they were defective and could

cause consumers to be exposed to asbestos fibers, which would subject patients to unreasonable risk, including risk of death.

81. Defendants knew or should have known about the presence of asbestos in their products based on their own internal testing results.

82. Upon information and belief, testing of CLUBMAN, ENGLISH LEATHER, MENNEN, NESLEMUR, and OLD SPICE I and II talcum powder has shown that it has been consistently and pervasively contaminated with asbestos for decades.

83. Defendants failed to include warnings with their Asbestos Contaminated Products regarding the presence of asbestos fibers, or the health hazards associated with asbestos exposure.

84. Defendants failed to include instructions with their products regarding the safe handling and use of the products, which could minimize or eliminate exposure to asbestos fibers. If Defendants had timely and adequately warned Plaintiff of this risk, Plaintiff's injuries would have been avoided.

85. Upon information and belief, not only did Defendants fail to warn about the presence of asbestos fibers in their products, they actively concealed the fact that these products could be contaminated with asbestos fibers through misrepresentation regarding the purity of their talc and by employing less stringent analytical methodologies to certify that asbestos was not detected in their products, thus misleading consumers into believing that these products were safe and free of asbestos fibers.

86. Defendants knew or should have known and notified consumers that their consumer talc products were defectively and improperly designed in that the raw talc and/or talc ore used as the main ingredient in these products was contaminated with asbestos fibers,

the inhalation of which could put consumers at risk for developing several asbestos-related diseases, including mesothelioma.

## COUNT I
## NEGLIGENCE AS AGAINST ALL DEFENDANTS

87.     Plaintiff repeats, reiterates and incorporates herein the prior and subsequent allegations of this Complaint with the same force and effect as if hereinafter set forth at length.

88.     Plaintiff Brian Gref frequently and regularly was exposed to the Asbestos Contaminated Products mined, milled, produced, processed, designed, manufactured, marketed, supplied, delivered, distributed, purchased, imported, exported, converted, compounded, removed, sold, or otherwise placed in the stream of commerce by Defendants. Said exposure directly and proximately caused him to develop an asbestos-related disease, specifically mesothelioma.

89.     At all times pertinent hereto, Defendants acted through their duly authorized agents, servants and employees who were then and there acting in the course and scope of their employment and in furtherance of Defendants' business.

90.     Plaintiff Brian Gref was necessarily and unavoidably exposed to and did inhale and ingest asbestos fibers from Defendants' Asbestos Contaminated Products.

91.     As a proximate result of the exposure to asbestos from Defendants' Asbestos Products and/or Asbestos Contaminated Products, Plaintiff Brian Gref developed an asbestos-related disease, specifically mesothelioma.

92.     At all relevant times, Defendants knew or should have known that the products they designed, milled, mined, manufactured, supplied, sold and/or distributed were consistently and pervasively contaminated with asbestos.

93.     At all relevant times, Defendants knew or with reasonable diligence should have known and/or ascertained that their Asbestos Contaminated Products were inherently dangerous

and hazardous to the health and well-being of persons using, exposed to or otherwise coming in contact with Defendants' Asbestos Contaminated Products.

94.    At all relevant times, Defendants knew or with reasonable diligence should have known and/or ascertained that the inherent dangers posed by their Asbestos Contaminated Products were beyond the expectations of the ordinary user or handler who would come into contact with said Asbestos Contaminated Products.

95.    Defendants knew or with reasonable diligence should have known and/or ascertained that the reasonable and anticipated use of, exposure to or contact with their Asbestos Contaminated Products would cause the release of asbestos fibers and dust, creating a danger and unreasonable risk of injury and harm to those in the vicinity of such Asbestos Contaminated products.

96.    Defendants knew or with reasonable diligence should have known and/or ascertained that Plaintiff would use or come into contact with Defendants' Asbestos Contaminated Products, and in so doing, would become exposed to, inhale and ingest the asbestos fibers as they were discharged and released from said Asbestos Contaminated Products in the course of ordinary and foreseeable contact, application and use thereof.

97.    Defendants knew or with reasonable diligence should have known and/or ascertained that Plaintiff used, came into contact with and was exposed to asbestos fibers emanating and released from Defendants' Asbestos Contaminated Products without any knowledge of the dangers and potential risk of harm to which he was thereby being subjected.

98.    Despite knowledge of the unsafe and dangerous nature and properties of asbestos, Defendants willfully, recklessly and negligently:

        a.    failed to warn the public at large, and specifically Plaintiff Brian Gref, of the dangers and hazards associated with or caused by the use of,

exposure to or contact with Defendants' Asbestos Contaminated Products resulting from the ordinary, anticipated and foreseeable use thereof;

b.   failed to study, investigate and/or properly test their Asbestos Contaminated Products for both potential and actual hazards associated with the use of, exposure to and contact with said products when said products were used in a reasonably foreseeable and anticipated manner;

c.   failed to communicate or convey their suspicions and knowledge with respect to potential or actual dangers and health hazards associated with the use of, exposure to or contact with their Asbestos Contaminated Products resulting in inhalation and ingestion of asbestos fibers by the users and consumers of said Asbestos Contaminated Products;

d.   failed to design or redesign their Asbestos Contaminated Products to prevent, impede or minimize the release of airborne inhalable and ingestible asbestos fibers;

e.   failed to design their Asbestos Contaminated Products to prevent, impede or minimize the asbestos contamination of their product and/or its component parts or ingredients.

f.   failed to properly design and manufacture their Asbestos Contaminated Products to insure safe use and handling by users and consumers under conditions that were reasonably anticipated and foreseeable;

g.   failed to advise the public at large, and specifically Plaintiff Brian Gref of the necessity for protective garments, safety equipment and appliances to protect the user/consumer from harm caused by inhalation and ingestion of asbestos fibers released by, and associated with the ordinary and foreseeable use of and contact with Defendants' Asbestos Contaminated Products;

h.   failed to institute, adopt or enforce appropriate safety protocols for handling and use of their Asbestos Contaminated Products and to communicate same to individuals, including Plaintiff, working with, utilizing, handling or otherwise coming into contact with said products;

i.   failed to adequately package and/or design the packaging of their

respective Asbestos Contaminated Products in a manner which would ensure safe handling and use by those individuals, including Plaintiff, who Defendants knew or should have reasonably anticipated would be exposed to asbestos fibers and dust released by and associated with the ordinary and foreseeable use of Defendants' Asbestos Products and/or Asbestos Contaminated Products;

j.   failed to remove their Asbestos Contaminated Products from the stream of commerce, despite knowledge of the unsafe and dangerous nature and condition of said Asbestos Products and/or Asbestos Contaminated Products;

k.   continued to mine, produce, process, design, manufacture, market, supply, deliver, distribute, use, purchase, import, export, convert, compound, and/or sell Asbestos Contaminated Products for general application and purposes without any alteration or change, despite the potential and known health hazards and dangers posed to the foreseeable and anticipated users and consumers of said Asbestos Contaminated Products;

l.   failed to timely develop and utilize substitute materials for use in their Asbestos Contaminated Products and/or develop non-hazardous substitutes that could have been used for the same purposes as their Asbestos Contaminated Products;

m.   failed to design or redesign their Asbestos Contaminated Products to prevent, impede or minimize the release of inhalable and/or ingestible asbestos fibers and dust;

n.   failed to recall and/or issue a post-sale warning for their Asbestos Contaminated Products;

o.   failed to provide warnings, advice, instructions or information to Plaintiff so that he may have made an adequate and informed judgment as to the use of Defendants' Asbestos Contaminated Products; and

p.   failed to develop, make available and/or provide non-hazardous materials which could have been used for the same purpose as their Asbestos Contaminated Products.

99.   Defendants, individually and as a group, since the early 1900s possessed medical and scientific data which clearly indicated that asbestos and, consequently, Asbestos Contaminated Products were hazardous. Further, since at least as early as 1971, Defendants possessed knowledge

regarding the potential for the talc and/or talc ore used in their products was contaminated with asbestos fibers. However, in pursuit of pecuniary motives, Defendants, individually and collectively, suppressed, ignored and/or failed to act upon said knowledge and medical and scientific data and conspired to deprive the public, and particularly users of their Asbestos Contaminated Products, including Plaintiff, of said knowledge and medical and scientific data. Therefore, Defendants deprived the public at large, including Plaintiff, of the opportunity of free choice regarding whether or not to expose themselves to Defendants' Asbestos Contaminated Products. Defendants further willfully, intentionally and wantonly failed to warn Plaintiff of the serious bodily harm which would result from the inhalation and ingestion of asbestos fibers from their Asbestos Contaminated Products.

100.    Defendants' continued mining, production, processing, design, manufacture, marketing, supply, delivery, distribution, installation, use, purchase, importation, exportation, conversion, compounding, and/or sale of their respective Asbestos Contaminated Products under the circumstances and conditions enumerated above demonstrates a callous, reckless, willful, depraved and wanton indifference to and disregard of the health, safety and welfare of the public at large, including Plaintiff

101.    As a result of the Defendants' negligence and recklessness, Plaintiff unwittingly and unavoidably inhaled and ingested asbestos fibers, which resulted in the development of his asbestos-related disease and injuries. Plaintiff has been caused to endure severe physical pain and suffering and mental anguish and has been placed at increased risk for developing other serious bodily injuries. Plaintiff had expended sums of money for medical care, treatment and monitoring related to his exposure to asbestos and his asbestos related disease and sequelae. Plaintiff was prevented from pursuing his normal activities and employment, was deprived of his ordinary

pursuits and enjoyment of life as a result of his mesothelioma. Plaintiff has suffered pecuniary losses as a result of his asbestos-related injuries.

102.    Plaintiff's injuries are a direct and proximate result of the negligence and carelessness of Defendants and their demonstrated wanton and reckless disregard for Plaintiff's safety and well-being.

103.    Defendants' utter failure to use reasonable care under all the circumstances is the proximate cause of Plaintiff's asbestos-related disease and injuries.

104.    By reason of the foregoing Plaintiff suffered and continues to suffer great pain, personal injuries, agony, mental anguish, emotional distress, surgeries, hospitalization, physical impairment, and economic losses.

105.    That no negligence on the part of the Plaintiff contributed to the occurrence alleged herein in any manner whatsoever.

106.    As a direct and proximate cause of the Defendants' negligence, breach of warranties, both expressed and implied, and strict liability in tort, Plaintiff contracted mesothelioma and suffers from various diverse injuries and attendant complications related to his mesothelioma diagnosis, endured great pain and suffering, and mental anguish.

107.    It was foreseeable to the Defendants that Plaintiff and others similarly situated, would be injured as a result of their actions, inactions and misconduct.

**WHEREFORE,** Plaintiff demands judgment against the Defendants, jointly and severally for:

        a.   Compensatory damages;

        b.   Punitive damages;

        c.   Pre-judgment and post judgment interest;

    d.  Costs;

    e.  Attorney fees and litigation expenses; and

    f.  Such other relief as the Court may deem just and proper.

## COUNT II
## BREACH OF WARRANTY AS AGAINST ALL DEFENDANTS

108.    Plaintiff repeats, reiterates and incorporates herein the prior and subsequent allegations of this Complaint with the same force and effect as if hereinafter set forth at length.

109.    The Defendants conduct and/or have conducted business in New York at all times relevant herein, including but not limited to, the sale, management, distribution, marketing, design formulation, processing and/or manufacturing of their talc/talcum powder, including asbestos contaminated talc/talcum and other finished and unfinished asbestos containing and/or asbestos contaminated products to which Plaintiff was exposed.

110.    The Defendants breached their warranties, both express and implied, for fitness of purpose and merchantability.

111.    In reliance on Defendants' warranties, Plaintiff Brian Gref used, came into contact with and/or was otherwise exposed to Defendants' Asbestos Contaminated Products, causing him to unknowingly and unwittingly inhale and ingest asbestos fibers resulting from the ordinary and foreseeable use of said products.

112.    The Defendants are strictly liable in tort

113.    As a direct and proximate cause of the Defendants' negligence, breach of warranties, both expressed and implied, and strict liability in tort, Plaintiff contracted mesothelioma and suffers from various diverse injuries and attendant complications related to his mesothelioma diagnosis, endured great pain and suffering, and mental anguish.

114.    It was foreseeable to the Defendants that Plaintiff and others similarly situated would be injured as a result of their actions, inactions and misconduct.

115.    That no negligence on the part of the Plaintiff contributed to the occurrence alleged herein in any manner whatsoever.

116.    That by reason of the foregoing, the Plaintiff has been damaged in an amount to be established at trial, but the damages of the Plaintiff exceed $75,000.00.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, jointly and severally for:

      a.    Compensatory damages;

      b.    Punitive damages;

      c.    Pre-judgment and post judgment interest;

      d.    Costs;

      e.    Attorney fees and litigation expenses; and

      f.    Such other relief as the Court may deem just and proper.

### COUNT III
### STRICT LIABILITY AS AGAINST ALL DEFENDANTS

117.    Plaintiff repeats, reiterates and incorporates herein the prior and subsequent allegations of this Complaint with the same force and effect as if hereinafter set forth at length.

118.    Defendants mined, produced, processed, designed, manufactured, marketed, supplied, delivered, distributed, installed, used, purchased, imported, exported, converted, compounded, removed, sold or otherwise placed into the stream of commerce Asbestos Contaminated Products in a defective, unsafe and unreasonably dangers condition, and said

products were expected to and did reach users, handlers and other persons coming into contact therewith without substantial change in the condition in which they left Defendants' possession.

119.   Defendants Asbestos Contaminated Products were defective in their design, manufacture, and in its failure to provide adequate warnings, and said defect existed at the time the Products left the Defendants' possession and control.

120.   Defendants' Asbestos Contaminated Products did not contain a warning and/or information concerning the asbestos-related dangers posed to persons using, handling or otherwise coming into contact therewith.

121.   Defendants' Asbestos Contaminated Products were defectively designed and during the relevant time period, Defendants were aware of a reasonable alternative design that would have altered the dangerous and defective condition.

122.   Defendants' Asbestos Contaminated Products did not contain adequate and correct warnings or instructions regarding safety precautions to be observed by users, handlers and persons who would foreseeably use or otherwise come into contact with said products.

123.   At all relevant times, Defendants' Asbestos Contaminated Products were being employed for the purpose and in the manner that was intended and foreseeable. The defects of Defendants' Asbestos Contaminated Products were not discoverable by Plaintiff through the exercise of reasonable care, the dangers of said products were not perceivable by Plaintiff, and Plaintiff would not have otherwise averted his injuries by the exercise of reasonable care.

124.   Defendants' Asbestos Contaminated Products were defective and dangerous at the time they left Defendants' possession, as they contained a latent defect and were harmful, poisonous and deleterious when inhaled and/or ingested.

125.     Defendants knew or otherwise expected that their Asbestos Contaminated Products would reach the ultimate users, including Plaintiff, without substantial change from, or alteration of, the condition in which said products were originally mined, produced, processed, designed, manufactured, marketed, supplied, delivered, distributed, installed, used, purchased, imported, exported, converted, compounded, removed or sold.

126.     Defendants knew or in the exercise of reasonable diligence should have ascertained that Plaintiff and others similarly situated would be the ultimate users or consumers of Defendants' Asbestos Contaminated Products and would be exposed to asbestos dust and fibers therefrom.

127.     Defendants knew that their Asbestos Contaminated Products would be used without inspection for defects and, by placing them in the marketplace, represented to the public at large, including Plaintiff that said products could be utilized safely in the manner and for the purpose for which they were intended.

128.     Defendants knew that their Asbestos Contaminated Products were defective and were incapable of being made safe for their ordinary, intended and foreseeable uses and purposes and that these defects were not discoverable by Plaintiff', or others similarly situated, in the exercise of reasonable care. The dangers and hazards of said products were not perceivable to Plaintiff such that he might otherwise have averted his injuries by the exercise of reasonable care. In light of the foregoing, the ordinary and foreseeable use of Defendants' Asbestos Contaminated Products constituted a dangerous and hazardous activity and placed the ultimate users, including Plaintiff, at an unreasonable risk of harm and injury. The risks and dangers created by the use of Defendants' Asbestos Contaminated Products outweighed their utility.

129.     The Defendants failed to implement or use the reasonable alternative design that was easily available at the time of manufacture, and would have prevented the injury causal defect and made the product safe for its intended purpose.

130.     The Defendants, jointly and severally, marketed an ultra-hazardous product and placed that product in the stream of commerce.

131.     Defendants breached their non-delegable duty to warn and negligently supplied defective materials and products without ensuring that Plaintiff, was warned about the dangers of asbestos exposure.

132.     The Defendants aforesaid were willful, by intentionally withholding from the Plaintiff, and his family, the known dangers associated with the use of asbestos compounds, second hand exposure, household exposure and intentionally withholding from the Plaintiff and his family, knowledge that breathing in respirable asbestos fiber dust generated from asbestos-contaminated talc powder products can be fatal. Defendants issued information, which they knew to be false concerning their product safety, and did willfully, wantonly and intentionally prevent the dissemination of information known to them concerning the products' hazards and dangers, and willfully, wantonly and intentionally failed to take the appropriate steps to minimize the risks of asbestos exposure, and otherwise acted willfully, wantonly and intentionally with reference to their products

133.     As a consequence of the warning, manufacturing and design defects of Defendants' Asbestos Contaminated Products and Plaintiff's resultant inhalation and/or ingestions of asbestos fibers and dust resulting from the ordinary and foreseeable use of said products, Plaintiff has sustained serious and permanent injuries and damages as more fully described herein.

134.     Plaintiff's injuries are the direct and proximate result of Defendants' placement into the stream of commerce of defective and unreasonably dangerous Asbestos Contaminated Products.

135.     The Defendants, by virtue of the foregoing, are strictly liable to Plaintiff for injuries and illnesses resulting from the defects and dangerous propensities of their Asbestos Contaminated Products.

136.     By reason of the foregoing, Plaintiff suffered great pain, personal injuries, agony, mental anguish, emotional distress, surgeries, hospitalization, physical impairment, and economic losses.

137.     That no negligence on the part of the Plaintiff contributed to the occurrence alleged herein in any manner whatsoever.

138.     It was foreseeable to the Defendants that Plaintiff and others similarly situated, would be injured as a result of their actions, inactions and misconduct.

139.     That by reason of the foregoing, the Plaintiff has been damaged in an amount to be established at trial, but the damages of the Plaintiff exceed $75,000.00

**WHEREFORE,** Plaintiff demands judgment against the Defendants, jointly and severally for:

      a.   Compensatory damages;

      b.   Punitive damages;

      c.   Pre-judgment and post judgment interest;

      d.   Costs;

      e.   Attorney fees and litigation expenses; and

      f.   Such other relief as the Court may deem just and proper.

**COUNT IV**
**NEGLIGENT FAILURE TO WARN AS AGAINST ALL DEFENDANTS**

140.    Plaintiff repeats, reiterates and incorporates herein the prior and subsequent allegations of this Complaint with the same force and effect as if hereinafter set forth at length.

141.    Defendants breached their non-delegable duty to warn and negligently marketed, sold, manufactured, designed, formulated, distributed and/or supplied defective materials and products without ensuring that Plaintiff was warned about the dangers of asbestos exposure.

142.    Plaintiff was exposed to asbestos fibers from Asbestos Contaminated Products mined, produced, processed, designed, manufactured, marketed, supplied, delivered, distributed, installed, used, purchased, imported, converted, compounded, removed, sold, or otherwise placed into the stream of commerce by Defendants.

143.    During the course of his lifetime, Plaintiff was exposed to and inhaled and/or ingested asbestos dust and fibers from Defendants' Asbestos Contaminated Products and such exposure directly and proximately caused him to develop an asbestos-related disease

144.    At all relevant times, Defendants knew or should have known that their Asbestos Contaminated Products were inherently dangerous and that such dangerous qualities were beyond the expectations and knowledge of the ordinary user or handler who would come into contact with said Asbestos Contaminated Products.

145.    Defendants negligently failed to provide adequate and proper warnings regarding the health hazards posed by their products.

146.    Defendants negligently failed to warn and failed to provide adequate instructions of safe handling methods, if any, which could have been utilized by reasonably foreseeable users, handlers and other persons came into contact with Defendants' Asbestos Containing Products.

147.     Defendants negligently failed to render warnings or advice or give instructions and information to Plaintiff so that he may have made an adequate and informed judgment as to the use of Defendants' Asbestos Contaminated Products.

148.     Defendants negligently failed to investigate and/or test for the hazards of asbestos.

149.     To the extent that a Defendant inquired as to the hazards of asbestos, Defendant negligently failed to convey to the users and consumers of its Asbestos Contaminated Products, including Plaintiff, whatever knowledge of dangers, health hazards or necessary safety precautions it discovered.

150.     Defendants, individually and as a group, since the early 1900s possessed medical and scientific data which clearly indicated that asbestos and, consequently, Asbestos Contaminated Products were hazardous. Further, since at least as early as 1971, Defendants possessed knowledge regarding the potential for the talc and/or talc ore used in their products was contaminated with asbestos fibers. However, in pursuit of pecuniary motives, Defendants, individually and collectively, suppressed, ignored and/or failed to act upon said knowledge and medical and scientific data and conspired to deprive their salesmen, and those who directly communicated with the salesmen, and the public, and particularly users of their Asbestos Contaminated Products, including Plaintiff, of said knowledge and medical and scientific data. Therefore, Defendants deprived the public at large, including Plaintiff, of the opportunity of free choice regarding whether or not to expose themselves to Defendants' Asbestos Contaminated Products. Defendants further willfully, intentionally and wantonly failed to warn Plaintiff of the serious bodily harm which would result from the inhalation and ingestion of asbestos fibers from their Asbestos Contaminated Products.

151.  Defendants' negligent and reckless failure to use reasonable care in providing adequate warnings under all of the circumstances was the direct and proximate cause of Plaintiff's injuries.

152.  As a direct and proximate result of, using or otherwise being present near Defendants' Asbestos Contaminated Products and the consequent and unavoidable inhalation and ingestion of asbestos fibers therefrom, Plaintiff developed asbestos-related injuries and endured great physical pain and suffering, mental anguish, and loss of enjoyment of his life.

153.  By reason of the foregoing, Plaintiff suffered great pain, personal injuries, agony, mental anguish, emotional distress, surgeries, hospitalization, physical impairment, and economic losses.

154.  That no negligence on the part of the Plaintiff contributed to the occurrence alleged herein in any manner whatsoever

155.  It was foreseeable to the Defendants that Plaintiff and others similarly situated, would be injured as a result of their actions, inactions and misconduct

156.  That by reason of the foregoing, the Plaintiff has been damaged in an amount to be established at trial, but the damages of the Plaintiff exceed $75,000.00.

**WHEREFORE,** Plaintiff demands judgment against the Defendants, jointly and severally for:

    a.  Compensatory damages;

    b.  Punitive damages;

    c.  Pre-judgment and post judgment interest;

    d.  Costs;

    e.  Attorney fees and litigation expenses; and

    f.  Such other relief as the Court may deem just and proper.

## PUNITIVE DAMAGES

157.    Defendants and each of them had a duty to refrain from willful, reckless and wanton acts, omissions and/or misconduct which would foreseeably harm Plaintiff Brian Gref and/or expose Plaintiff Brian Gref to harm.

158.    Defendants and each of them breached said duties in that one or more of the above-described acts and/or omissions constitute willful, reckless, and wanton misconduct and manifests an intentionally and reckless disregard for the health, safety, and well-being of Plaintiff Brian Gref and others similarly situated.

159.    As a direct and proximate result of such willful, reckless, and wanton acts and/or omissions on the part of the Defendants and each of them, Plaintiff Brian Gref was exposed to asbestos as described, causing Plaintiff Brian Gref to develop mesothelioma and thereby sustain damages as outlined above as against each Defendant.

160.    In addition to compensatory damages, an award of punitive damages is necessary and appropriate to punish Defendants and each of them for their willful, wanton and intentional misconduct and reckless disregard for the health, safety and well-being of Plaintiff Brian Gref, and to deter Defendants and others from engaging in like misconduct in the future.

**WHEREFORE**, Plaintiff demands and prays judgment against Defendants and each of them, jointly, severally or in the alternative, as follows:

  a.  Compensatory damages on each cause of action in an amount to be determined at trial, but exceeding the jurisdictional limits of any and all lower courts;

  b.  Punitive damages in amounts to be determined at trial, but exceeding the jurisdictional limits of any and all lower courts;

  c.  An award of interest (pre- and post- judgment), costs and disbursements incurred in this action; and,

    d.  Such other and further relief as this Court deems appropriate.

## **<u>JURY DEMAND</u>**

Plaintiff hereby invokes his right to a trial by jury as to all counts and issues pled against the Defendants in this case.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, on the First, Second, Third, and Fourth Counts in an amount to be determined at trial of this matter, which exceeds $75,000.00 on each Cause of Action, together with the costs and disbursements of this action, and for such other and further relief as the Court herein deems just and proper.


Dated: New York, New York
       May 7, 2021

                                          **SIMMONS HANLY CONROY**

                                          */s/ James M. Kramer*
                                          James M. Kramer, Esq.
                                          112 Madison Avenue, 7th Floor
                                          New York, New York 10016-7416

                                          Attorneys for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 7th day of May 2021, I electronically filed the forgoing with the Clerk of the Court via the CM/ECF system, which will send a notice of the electronic filing to all Counsel of Record.

*/s/ James M. Kramer*