# EXHIBIT H

```
 1             SUPERIOR COURT OF NEW JERSEY
 2           LAW DIVISION; MIDDLESEX COUNTY
 3                      - - -
 4   DWAYNE JOHNSON,
 5                 Plaintiff,     Docket No.
 6   v.                           MID-L-6651-16AS
 7   AMERICAN INTERNATIONAL
 8   INDUSTRIES, INC., et al.,
 9                 Defendants.
10                      - - -
11
12
13
14             SUPERIOR COURT OF NEW JERSEY
15           LAW DIVISION; MIDDLESEX COUNTY
16                      - - -
17   MARGARET ROSE LANGLEY LASHLEY
18   and EDWARD GENE LASHLEY,
19                 Plaintiffs,    Docket No.
20   v.                           MID-L-7336-16AS
21   AMERICAN INTERNATIONAL
22   INDUSTRIES, INC., et al.,
23                 Defendants.
24                      - - -
```

Page 2

```
 1
 2
 3
 4
 5
 6                     -  -  -
 7              January 15, 2020
 8                     -  -  -
 9
10           Videotaped deposition of
11   JACQUELINE MOLINE, MD, held at 175
12   Community Drive, Great Neck, New York,
13   commencing at 10:00 a.m., on the above
14   date, before Marie Foley, a Registered
15   Merit Reporter, Certified Realtime
16   Reporter and Notary Public.
17                     -  -  -
18
19
20
21
22
23
24
```

```
 1   A P P E A R A N C E S:

 2

 3   SIMON GREENSTONE PANATIER, PC

 4   BY: LEAH C. KAGAN, ESQUIRE

 5       1201 Elm Street

 6       Suite 3400

 7       Dallas, Texas   75270

 8       214.276.7680

 9       lkagan@sgptrial.com

10       Representing the Plaintiffs

11

12

13   LATHROP GPM

14   BY: ROBERT E. THACKSTON, ESQUIRE

15       2101 Cedar Springs Road

16       Suite 1400

17       Dallas, Texas   75201

18       469.983.6100

19       robert.thackston@lathropgpm.com

20       Representing the Defendant AII

21

22

23

24
```

```
 1   TELEPHONIC APPEARANCES:

 2

 3

 4   HAWKINS PARNELL & YOUNG LLP

 5   BY: ROY F. VIOLA, JR., ESQUIRE

 6       600 Lexington Avenue

 7       8th Floor

 8       New York, New York  10022

 9       212.897.9655

10       rviola@hpylaw.com

11       Representing the Defendant AII

12

13

14   ALSO PRESENT:

15       Eileen Shimizu, Ph.D., Lathrop Gage

16       Marcello Rivera, videographer

17

18

19

20

21

22

23

24
```

 1                    - - -

 2              TRANSCRIPT INDEX

 3                                        PAGE

 4   APPEARANCES....................... 3 - 4

 5   INDEX OF EXHIBITS................. 6 - 10

 6   EXAMINATION OF JACQUELINE MOLINE, MD:

 7   BY:  MR. THACKSTON................ 13

 8   AFTERNOON SESSION................. 149

 9   SIGNATURE PAGE.................... 321

10   REPORTER'S CERTIFICATE............ 322

11

12   EXHIBITS WITH ORIGINAL TRANSCRIPT

13

14                    - - -

15

16

17

18

19

20

21

22

23

24

Page 30

1   about that.
2       Q.    You mention the Bell case.
3             That's another case arising out
4   of North Carolina that you were retained
5   as an expert in, right?
6       A.    Correct.
7       Q.    Are you still an expert in the
8   Bell case?
9       A.    I don't know if the case is
10  resolved or not.  So I don't know it's a
11  present tense or past tense.
12      Q.    You wrote a report in the Bell
13  case, right?
14      A.    I did write a report in the Bell
15  case.
16      Q.    And in your article that you did
17  with Dr. Gordon, you talk about 33 cases,
18  right?
19      A.    Yes.
20      Q.    Was Bell one of the 33 cases?
21      A.    I am not discussing the
22  individuals included in any of the case --
23  in any of -- in the article.
24      Q.    Well, but the individuals in the

1    article are all individuals that filed

2    lawsuits, and the reason that you're --

3    you know about them is because you were an

4    expert witness in their case, right?

5            MS. KAGAN:  Argument;

6    foundation.

7       A.    That is correct.

8       Q.    So, you weren't the treating

9    physician for any of the 33 patients that

10   were included in your article, right?

11      A.    Correct.

12      Q.    Whatever information you had

13   from your article you got from deposition

14   transcripts and other legal documents

15   associated with the case, right?

16      A.    Or an in-person interview, if I

17   had the opportunity to meet them.

18      Q.    So, why can't you tell me

19   whether the Bell case was one of the cases

20   that you included in your article?

21      A.    Because the individual names

22   and -- are covered under research

23   protections for confidentiality.

24      Q.    Are covered by, I'm sorry?  What

```
 1      Q.    You said many of them learned
 2   about it for the first time then.
 3            How did the others learn about
 4   it for the first time?
 5      A.    I may have, in the course of --
 6   once the paper was accepted, before it was
 7   actually out, I may have told people that
 8   there was a paper coming out, but they
 9   didn't have a copy of it.
10      Q.    So, you may have discussed the
11   fact that you were doing a paper, but you
12   didn't send it to anyone?
13      A.    I didn't discuss it that I was
14   doing a paper.  I discussed that I did a
15   paper.  There's a big difference.
16            They weren't informed that a
17   paper was done until it was done and it
18   had been accepted.  So, once the paper was
19   accepted, I informed people that there was
20   a paper that was forthcoming.
21      Q.    And you didn't have to -- you
22   didn't have to ask permission from the
23   lawyers who sent you the information to
24   use that information in something other
```

1  than the lawsuit in which they hired you?
2    A.   I did not ask permission.
3    Q.   And this says that it was done,
4  on page 5 it says:  Study conducted with
5  approval from the Northwell Health
6  Einstein Institute For Medical Research,
7  number whatever, number 18-0225FIMR.
8        What does that mean?
9    A.   It means that we submitted our
10 protocol to the Northwell Health
11 Institutional Review Board that governs
12 research on -- in papers and things like
13 that involving individuals.
14    Q.   Now, I thought -- I thought you
15 told us earlier that there was not a
16 protocol.
17       Was it -- what kind of protocol
18 did you submit?
19      MS. KAGAN:  Mischaracterizes and
20   argument as to the preamble.
21      MR. THACKSTON:  Well, let me
22   withdraw that and rephrase it.
23 BY MR. THACKSTON:
24    Q.   I asked you earlier if there was

Page 170

```
 1   a protocol that you followed for making
 2   the determination of whether someone was
 3   exposed to asbestos and you said no, but
 4   you submitted a protocol to the -- to your
 5   employer, I guess.
 6             What kind of detail did the
 7   protocol that you submit contain?
 8             MS. KAGAN:  Objecting to the
 9       preamble as mischaracterizes and
10       argument.
11   A.    It's a -- it's filling out forms
12   with respect to what the conduct of a
13   particular project is going to be.  It's a
14   standard form used in all studies that are
15   conducted saying what you plan to do, and
16   then the Institutional Review Board meets
17   to discuss whether there is -- the
18   research is being conducted in a way to
19   protect patients, or whether it -- the
20   benefits outweigh the risks.  If you're
21   doing a clinical trial, you have to get
22   your study approved.  It's the same
23   Institutional Review Board.
24   Q.    Could -- for the -- for the
```

Page 171

```
 1   materials that you relied upon for your
 2   conclusions that the subjects were not
 3   exposed to asbestos other than through
 4   cosmetic talc, couldn't you make those
 5   materials available and just redact the
 6   personal identifying information?
 7        A.    I don't know if that would be
 8   considered allowable, and I would have
 9   to -- it would involve a lot of
10   redactions.  I don't know if that would be
11   considered allowable.
12             MS. KAGAN:  What is or is not
13        considered allowable for the release
14        of this information should be taken up
15        with the Northwell and Mount Sinai
16        lawyers, not what Dr. Moline feels
17        like doing.
18             MR. THACKSTON:  Object to the
19        sidebar.
20   BY MR. THACKSTON:
21        Q.    From a -- from a -- from the
22   standpoint of transparency in the
23   information that you relied upon, amount
24   of effort aside, you could create a link
```

```
 1   that said, Here's the discovery
 2   information that I relied upon to reach
 3   the conclusion that these people had no
 4   other exposure to asbestos, right?  'Cause
 5   this is all material that was -- defense
 6   lawyers had during the course of the
 7   cases, right?
 8           MS. KAGAN:  Pre -- objection to
 9      the preamble.  And then objection to
10      the seemingly unrelated question;
11      foundation; argument;
12      mischaracterizes.
13           MR. THACKSTON:  I hate to say
14      it, but that's right.  It's compound.
15      So let me just back up.
16   BY MR. THACKSTON:
17      Q.   The information that you used
18   to -- to write your paper was all
19   information that was in the possession of
20   defense lawyers during the case that you
21   were involved in, right?
22      A.   I would assume so, yes.
23      Q.   Have you -- have you ever
24   written a report in a case and then found
```

Page 323

```
 1              C E R T I F I C A T E
 2   STATE OF NEW YORK
 3   COUNTY OF NEW YORK
 4
 5             I, Marie Foley, RMR, CRR, a
 6   Certified Realtime Reporter and Notary
 7   Public within and for the State of New
 8   York, do hereby certify:
 9             THAT JACQUELINE MOLINE, MD, the
10   witness whose deposition is hereinbefore
11   set forth, was duly sworn by me and that
12   such deposition is a true record of the
13   testimony given by the witness.
14             I further certify that I am not
15   related to any of the parties to this
16   action by blood or marriage, and that I am
17   in no way interested in the outcome of
18   this matter.
19             IN WITNESS WHEREOF, I have20
    hereunto set my hand this 23rd day of
21   January, 2020.
22
                    _____
23
                       MARIE FOLEY, RMR, CRR
24
```