# Exhibit F

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | |
|---|---|
| LLOYD BELL, Individually and<br>As Executor of the Estate of BETTY<br>WHITLEY BELL, Deceased,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN INTERNATIONAL<br>INDUSTRIES, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  CASE NO. 1:17-CV-00111 |

## AFFIDAVIT OF JAQUELINE MOLINE, M.D.

I, Jaqueline Moline, M.D., having been duly sworn, hereby depose and state as follows:

1. I am over eighteen (18) years of age, competent to testify as to the matters herein, and make this affidavit of my own free will, stating facts of which I have personal knowledge.

2. I am an employed physician at Northwell Health, Inc. ("Northwell") and am board-certified in internal and occupational medicine.

3. In addition to other roles, I am the chairperson of the Department of Occupational Medicine, Epidemiology and Prevention at North Shore University Hospital, which is a part of Northwell.

4. I am also a professor of medicine at the Donald and Barbara Zucker School of Medicine at Hofstra/Northwell.

5. I serve on the editorial boards of several journals on industrial, occupational and environmental medicine.

6. I am a fellow of the American College of Physicians, the American College of Occupational and Environmental Medicine, and the New York Academy of Medicine.

7. In 2019, I—along with Kristin Bevilacqua, MPH, Maya Alexandri, JD, and Ronald Gordon, Ph.D.—authored and published a peer-reviewed article entitled, "Mesothelioma Associated with the Use of Cosmetic Talc" ("Article").

8. The Article was based on our analysis of thirty-three individuals with malignant mesothelioma who had no known asbestos exposure other than to cosmetic talcum powder.

9. The Article's conclusion is that exposure to asbestos-contaminated talcum powders can cause mesothelioma and that clinicians should elicit a history of talcum powder usage in all patients presenting with mesothelioma.

10. Prior to drafting the Article, I sought and secured approval from Northwell's Human Research Protection Program ("HRPP") through its Institutional Review Board ("IRB").

11. Northwell's HRPP supports, facilitates, and promotes the ethical and safe conduct of research involving human subjects at Northwell.

12. The Northwell IRB is an independent research ethics review board—mandated by law and applicable regulations—and consists of healthcare professionals, scientists, and local community members.

13. I am familiar with IRB-related requirements.

14. The IRB serves to protect research participants' rights and welfare before and during research studies.

15. Specifically, IRBs are intended to ensure the protection of research subjects' privacy and confidentiality rights, including—most fundamentally—their identities and protected health care information ("PHI").

16. In the application for approval from the Northwell IRB for the research study and publication of the Article, I represented that (1) I took confidentiality seriously, and would take extensive measures to protect, the participants' identities; (2) no patient identifiers would be included in research-related summaries; (3) all PHI included in my review and the Article would be de-identified; (4) and the PHI would be stored in Northwell's secure database.

17. As a result of these and other representations about the research study, Norwell's IRB granted approval on March 23, 2018.

18. In so doing, the IRB approval stated that my research study met the criteria outlined in 45 C.F.R. § 46.110 and 21 C.F.R. § 56.110.

19. Indeed, the IRB approval was specifically based on the fact that my research study contained adequate provisions to protect and maintain the confidentiality of data and research participants.

20. The IRB approval also specifically directed me that research must be conducted in accordance with, *inter alia*, 45 C.F.R. § 46 and the Health Insurance Portability and Accountability Act ("HIPAA").

21. Following the IRB approval in March 2018 and throughout the Article's research and publication process, I protected the research subjects' privacy and confidentiality.

22. Specifically, I did not disclose or otherwise reveal the research subjects' identities, as required by Northwell's IRB and applicable laws and regulations.

23. Indeed, to date, I have not disclosed the identities of the research subjects in the Article. For example, when I was deposed in a separate but related case in January 2020, I refused

3

to disclose Plaintiff's identity in response to questions from counsel for Defendant, American International Industries ("AII"), about the Article.

24. My refusal to identify the Plaintiff's status as a research subject was based on IRB, privacy, and confidentiality standards surrounding research studies.

25. I believe strongly that requiring my disclosure of Plaintiff's identity as it relates to the above-referenced research study and the Article would be improper under applicable IRB privacy and confidentiality requirements, as well as bedrock standards and accepted norms in the medical research community for protecting research subjects.

The foregoing is true and correct to the best of my knowledge.

FURTHER THE AFFIANT SAYETH NAUGHT.

This the 18 day of December, 2020.

_____
Jaqueline Moline, M.D.

Sworn to and subscribed before me,
a Notary Public, this the 18th day
of December, 2020.

_____
Notary Public                                         (SEAL)

My Commission Expires: July 12, 2022

MARK ANTHONY GLOADE
NOTARY PUBLIC, State of New York
No. 01GL4995329
Qualified in Westchester County
Commission Expires July 12, 2022

4