# LANDMAN CORSI BALLAINE & FORD P.C.

A NEW YORK PROFESSIONAL CORPORATION

ATTORNEYS AT LAW

| | | |
|---|---|---|
| JANELLE N. WINTERS<br>MEMBER<br>EMAIL: jwinters@lcbf.com | ONE GATEWAY CENTER<br>22ND FLOOR<br>NEWARK, NJ 07102<br>TELEPHONE (973) 623-2700<br>FACSIMILE (973) 623-4496<br>www.lcbf.com | 120 Broadway<br>13th Floor<br>New York, New York 10271<br>Tel: (212) 238-4800<br><br>One Penn Center<br>1617 JFK Boulevard, Suite 955<br>Philadelphia, PA 19103<br>Tel: (215) 561-8540 |

March 8, 2022

*Via ECF*
Hon. Valerie Figueredo
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:  **Brian Joseph Gref v. American International Industries, et al.**
           **Case No.: 1:20-cv-05589-GBD-DCF**

Dear Justice Figueredo:

      Defendant Whitaker, Clark & Daniels, Inc. ("WCD") by its counsel supplement's its Opposition to Northwell Health, Inc.'s ("Northwell") Motion to Modify the Subpoena served by Defendant WCD ("Motion to Modify") consistent with this Court's February 8, 2023 ruling permitting supplemental briefing from all Parties to this motion. For the reasons set forth below as well as those articulated in the Opposition of WCD and American International Industries ("A.I.I.") as well as the supplemental briefing of A.I.I., and the Oral Argument on this motion, the Court should deny Northwell's motion to modify the subpoena and enter an Order compelling Northwell to produce the records relied upon or reviewed by Plaintiff's expert Dr. Jacqueline Moline for the publication of her article, "Mesothelioma Associated With the Use of Cosmetic Talc," Journal of Occupational and Environmental Medicine, Vol. 62, No. 1, Jan. 2020 ("Moline Article").

      The following are material and undisputed facts and information from the record related to the instant motion:

1) The burden of persuasion for the instant motion is on Northwell;

2) Dr. Moline is an expert identified by Plaintiff in this matter and is expected to testify at trial;

3) The subpoenaed records are comprised of non-confidential publicly available litigation materials compiled by Dr. Moline from her role as an expert in talc litigation;

4) The Moline Article is expected to be relied on by Plaintiff through Dr. Moline and potentially other Plaintiff experts in this matter to support Plaintiff's causation claims

against Defendants;

5) Northwell is not an uninterested non-party in that it profits from talc litigation and Dr. Moline's work as an expert in talc litigation; and

## ARGUMENT

While Northwell's counsel made various attempts during oral argument to shift the burden of persuasion for the instant motion to WCD and A.I.I., "[t]he burden of persuasion in a motion to quash a subpoena is born by the movant," here, Northwell. *Travelers Indem. Co. v. Metro. Life Ins. Co.*, 228 F.R.D. 111, 113 (D. Conn. 20025). Moreover, the subpoenaed records need only be relevant to the underlying claims or defenses in this matter for A.I.I. and WCD to be entitle to production of same. Though Northwell spent a portion of its oral argument on the instant motion expressing its opinion that the subpoenaed records are not a "lynchpin" to WCD's defenses, this is not the standard. The standard is relevance.

As a showing has been made (on the record and as set forth more fully in Section 'II' below) concerning the relevance of the subpoenaed records to claims and defenses in this matter, the burden is entirely on Northwell to show good cause for why it should not be required to comply with the subpoena. *See Dove v. Atl. Capital Corp.*, 963 F.2d 15, 19 (2d Cir. 1992).

Northwell has not met this burden. Specifically, Northwell has not identified a single case that quashes or modifies a subpoena, on the basis of "patient" or "human subject" confidentiality, wherein the subpoena seeks discovery of publicly available litigation materials from a testifying expert who has been identified as an expert in the underlying case.

Instead, Northwell asks this Court to rely on its self-serving application of HIPAA and the Common Rule to the subpoenaed records without so much as administrative guidance to support its application of these laws or regulations to the litigation materials at issue herein. For this reason alone, Northwell's motion should be denied and Northwell should be required to comply with the subpoena. However, to the extent the Court determines that HIPAA or the Common Rule preclude full disclosure of the subpoenaed records, WCD proposes the following means of addressing those concerns:

1. The records relied upon for the Moline Article (which we understand to include depositions, transcripts, expert reports of Dr. Moline, and other materials from the underlying litigation) should be produced in their entirety, but with all medical information redacted. This would include the redaction of diagnoses, summaries of health histories, summaries of family histories and the like; or

2. The deposition transcripts and expert reports of Dr. Moline from the 33 Litigants' cases should be produced by Northwell, but with all medical information redacted. This would include the redaction of diagnoses, summaries of health histories, summaries of family histories and the like; or

3. The spreadsheet created by Northwell related to the 33 Litigants should be produced, but with the column related to diagnosis as well as any other medical information redacted.

4854-7472-8277v.1

**I.   Lack of confidentiality**

WCD adopts and incorporates A.I.I.'s arguments related to the inapplicability of HIPAA and the Common Rule as set forth in A.I.I.'s original Opposition and its supplemental briefing. *See* ECF Nos. 279 and 319.

Northwell, Plaintiff's counsel, and Dr. Moline's counsel have not cited a single case that found confidentiality under the circumstances presented to the Court. In fact, the only cases cited by Northwell in support of its motion do not support Northwell's confidentiality claims. Specifically, while certain cases involve subpoenas of non-parties for information concerning "human subjects," the cases are distinguishable for many reasons, not limited to" they involve uninterested non-parties, do not seek information from an expert in the underlying case, and involve subpoenas for medical records, not publicly available litigation materials. *See In re American Tobacco*, F.2d. 1520 (2d Cir. 1989); *Cusumano v. Microsoft Corp.*, 162 F.3d 708 (1st Cir. 1998); *Andrews v. Eli Lilly & Co., Inc.*, 97 F.R.D. 494, 499 (N.D. Ill. 1983); *Lampshire v. Proctor & Gamble Co.*, 94 F.R.D. 58 (N.D. Ga. 1982). Moreover, notably absent from each of these cases is any discussion of HIPAA precluding disclosure. *Id.*

The Court asked counsel for Northwell during oral argument to identify a case that found privilege or confidentiality in circumstances similar to this case, Northwell was unable to identify any such case. *See* ECF No. 310. Moreover, Northwell's supplemental briefing fails to present any new case law to the Court (answering this request) that would apply any form of confidentiality or privilege to the materials subject to subpoena in this matter, *i.e.* pleadings, transcripts, expert reports, and other litigation materials compiled and reviewed by a testifying expert. *See generally* ECF No. 313.

Furthermore, while Northwell cites the general definitions under HIPAA in its briefm, it does not direct this Court to any federal guidance, OCR findings, Department of Health findings, or case law that stands for the proposition that expert reports from litigation, deposition transcripts, or pleadings constitute Protected Health Information under HIPAA simply because they were uploaded to the server of a "Covered Entity," and discuss medical information. *Id*. Thus, Northwell has failed to meet its burden of persuasion as to its confidentiality arguments.

    a.   <u>The availability of the subpoenaed records through litigation</u>

In addition to there being no authority or precedent that would render the subpoenaed litigation records confidential or privileged under these circumstances of this case, the facts on the ground in this litigation completely undermine Northwell's arguments, especially to the extent Northwell relies on the potential harm to the 33 Litigants relied referenced in the Moline Article as a basis for modifying the subpoena. Your Honor directed Northwell's counsel to investigate the dockets of three deceased plaintiffs referenced in the Moline Article, to determine whether any of the subpoenaed records such as deposition transcripts, expert reports of Dr. Moline, etc. are publicly available on those dockets. *See* ECF No. 310. Tellingly, Northwell's counsel did not fully respond to this inquiry and instead merely informed the court that the dockets contained "information about the Subjects' mesothelioma diagnoses," *See* ECF No. 313 at p. 7.

4854-7472-8277v.1

Northwell was likely illusive on this point because the dockets for the cases of each of the 33 Litigants in the Moline Article are expected to contain the very information that is the subject of the instant subpoenas. While Northwell attempts to downplay the significance of this fact, it is directly relevant to:

1) whether the 33 Litigants would be harmed by disclosure,

2) whether Northwell and / or Dr. Moline's claims of confidentiality in response to the subpoenas are made in good faith, and

3) whether the subpoenaed records are of a public nature.

Notably, in mesothelioma litigation, pleadings, deposition transcripts, and the reports of Dr. Moline are regularly filed without a protective order or any limitation on subsequent disclosure. *See* **Exhibits A-D**, copies of dockets or filings in various cases.[1] The dockets and filings from these matters demonstrate the regularity with which Dr. Moline's reports are filed as exhibits in support of motions or otherwise. *Id*. Dr. Moline's reports are regularly filed without protective order or any limitation on their use outside of the respective cases. *Id*. These reports, as with the report in the instant matter, contain summaries of the corresponding plaintiffs' medical information. Yet, Northwell and Dr. Moline have never attempted to protect these records from disclosure outside of their respective cases.

As it is expected that the public filings or dockets of each of the 33 Litigants contain similar filings, there would be no harm to the 33 Litigants from disclosure in this case. Moreover, Northwell's selective claims of HIPAA solely for the purpose of avoiding response to the instant subpoenas suggests that the claims of confidentiality in the instant motion are not made in good faith. If it were true that HIPAA protects the medical information Dr. Moline receives in her role as an expert from disclosure, one would expect Northwell to take action to prevent Dr. Moline's continuous and ongoing public disclosure of this information in cases across the country. In fact, the reports of Dr. Moline in these various cases and throughout the litigation at large are issued on Northwell letterhead and are filed publicly with Dr. Moline's knowledge / permission as an employee of Northwell.

Further, as it relates to the purported confidentiality of the subpoenaed records, it is important to note that there is a significant likelihood that WCD is a party to actions filed by many of the 33 Litigants. Additionally, given how long mesothelioma cases take to litigate, it is very possible that many of these cases are still pending against WCD or otherwise.

---

[1] **Exhibit A** is a Certification of Counsel filed by Simmons Hanly Conroy, LLC (counsel for Brian Gref in this matter) and the corresponding Exhibit 45 filed publicly in *Luke, et al v. Brenntag North American, et al.*, MID-L-7565-17, venued in Middlesex, New Jersey. **Exhibit B** is a copy of portions of the docket from *Campise et al. v, Arkema, Inc. et al.,* Docket No. 814239/2021, venued in New York County, New York with corresponding declaration of Dr. Moline filed in the case; **Exhibit C** is portions of the Opposition to a Motion for Summary Judgment filed by the Plaintiff and the corresponding Exhibit 48 filed on the electronic docket in *Brady, et al v. Fisher Scientific Company*, Case ID: 161103253, venued in Philadelphia Pennsylvania; **Exhibit D** is a Motion in Limine and corresponding Exhibit '1' filed by the Plaintiff in *Breakell, 3M Co., et al.*, Docket No.: FBT-CV17-6066689.

## II.   Relevance

As set forth above, A.I.I. and WCD need not demonstrate that the subpoenaed records are the "lynchpin" of its defenses in this matter. The records need only be relevant. While the relevance of these records is arguably facially obvious and was not disputed in Northwell's original motion (*see* ECF No. 269), certain mischaracterizations at oral argument regarding their pertinence have made it necessary to address in more detail the materiality and direct relevance these records have to the claims and defenses in this case.

Dr. Moline's was identified as an expert by Plaintiff in this matter and in that capacity issued a report on October 28, 2021. Additionally, Dr. Moline's report directly relies on and cites to the Moline Article. In addition to being cited as general relianc, in support of her opinions that use of cosmetic talcum powder increases the risk of mesothelioma and that Plaintiff's mesothelioma was caused by his cosmetic talc use, Dr. Moline specifically cites to the Moline Article at footnote 2, page 22 of her Report in this matter in support of the following opinion:

> As described above, and recently referenced by the Center for Disease Control, as well as published in the peer-reviewed literature, there are numerous other individuals with exposure to asbestos-containing talc products who have developed malignant mesothelioma.

Dr. Moline is expected to testify to these opinions at trial and is expected to rely on the Moline Article in support of these opinions. Thus, the relevance of the Moline Article cannot rationally be questioned.

Moreover, to the extent Northwell and Plaintiff attempted to imply at oral argument that the Moline Article is just one of 492 equally relevant articles cited by Dr. Moline, same is misleading. First the other articles cited by Dr. Moline in her report were not written by Dr. Moline. Additionally, the representations made in the Moline Article have already been proven to be partially false or misleading through the discovery of Ms. Bell's identity as a litigant from the Moline Article, which goes directly to Dr. Moline's credibility and therefore the credibility of a testifying expert in this case. *Bell v. Am. Int'l Indus.*, No. 1:17CV111 ("Bell"), 2022 WL 16571057, at *2, *7 (M.D.N.C. Sept. 13, 2022). Defendants should be permitted to discover whether Dr. Moline's misrepresentations in her article go beyond Ms. Bell and the extent of same.

Additionally, and as discussed at oral argument, outside of Dr. Emory's article, the Moline Article is the only article or study cited by Dr. Moline that purports to study and find a causal link between consumer use of cosmetic talc and incidences of mesothelioma. Similarly, of the eleven sources cited by Dr. Moline at footnote 2 of her report, Dr. Moline's and Dr. Emory's articles are the only sources that purport to have found this association between consumer use of cometic talc and risk of mesothelioma.[2] None of the remaining sources involves a study which finds a connection between consumer use of talc and incidences/rates of mesothelioma. In fact, most of

---

[2] At oral argument counsel for Plaintiff represented to the Court that additional studies exist which purport to study or make findings concerning a causal connection between consumer use of cosmetic talc and incidences/risk of mesothelioma, however no such studies were identified or submitted by Plaintiff's counsel with his 2/22/23 supplemental brief.  *See* ECF No. 312.

the sources do not attempt to study cosmetic talc users or mesothelioma incidences of any particular population.

Specifically, the balance of the sources[3] relied on by Dr. Moline at footnote 2 of her report, and their findings are as follows:

- *Andrion, Alberto, et al.* (June 1994) - a pathology case study of a single 17-year-old boy with mesothelioma, which the publisher attributes to cosmetic talc because the boy used talc and had talc particle in his tissue. The article does not involve a study of consumer use of cosmetic talc, or purport to find a causal connection between consumer use and incidences of mesothelioma.

- *Bulbulyan, M.A., et al.* (1999) - a cohort study of women who worked in the book printing industry, which found an increased risk of esophagal and stomach cancer among the cohort. While the study refrences a *single* incidence of mesothelioma in the cohort that "might" be attributable to talc use in the binding process, notably absent from the article was any finding of increased risk of mesothelioma whether among the cohort or related to talc in any form.

- *Finkelstein, M*. (2012) - a retrospective review of a cohort study on talc miners and millers, which offers no conclusions related to consumer use of cosmetic talc and/or an increased risk/incidence of mesothelioma among cosmetic talc users.

- *Ghio, A, Roggli, V*. (2001) - a publication that discusses whether talc pleurodesis should be used in patients with non-malignant cancer. Notably, the article opines that whether talc is contaminated with asbestos should be closely examined before making decisions on whether to use talc clinically, but again offers no findings or opinions related to a causal link between talc use and incidences of mesothelioma.

- *Fujiwara, Hiroshi, et al.* (2005) - a pathology/autopsy review of a single individual who was diagnosed with mesothelioma post mortum who sharpened slate pencils.

- *Ilgren E, et al.* (2015) - an article related to incidences of mesothelioma among miners and millers of chrysotile asbestos and unrelated to cosmetic talc use.

- *Lamm, S.H., et al.* (1988) – an article that compares incidences of non malignant respiratory disease of Vermont talc miners and millers compared to New York talc miners and millers. Mesothelioma is mentioned in one sentence and the article offers no discussion on an increased of mesothelioma associated with cosmetic talc use or even an increased risk among the talc miners and millers in the cohorts.

- *Mirabelli D* (2017) - not a study, but a letter commenting on a study that found no increased incidence of mesothelioma among Italian talc miners and millers.

- *Musti, et al*., (2009) – a case study of two women with ovarian mesothelioma one of which did not recall a history of cosmetic talc use and one that did. The article

---

[3] The sources are attached as **Exhibit E**.

offers no opinion on the existence of a causal link between incidences of mesothelioma and consumer use of cosmetic talc.

The lack of any increased incidence of mesothelioma among the population and women especially, corresponding to talc use, is a critical hole in Plaintiff's claims in this case. Of course, the fact that Plaintiff and his experts cannot demonstrate a causal link between individuals who have used the product(s) at issue in this case and rates of mesothelioma goes to the heart of the WCD's defenses in this case. More pointedly, the dearth of any epidemiological studies demonstrating increased incidences/rates of mesothelioma among populations of people who used cosmetic talc as compared to people who did not use cosmetic talc represents a major gap in Dr. Moline's opinions in this case and the litigation generally.

In an attempt to compensate for this hole in the science, Dr. Moline used <u>litigation materials</u> from selective cases, which she obtained through her role as a litigation expert, to complete a "case study," in which she concludes that there is a causal link between mesothelioma and populations who used cosmetic talcum powder. Moreover, Dr. Moline is attempting to use the Moline Article as a means of putting into evidence and putting into issue, information that would otherwise be precluded as irrelevant and prejudicial, *i.e.* the existence of additional plaintiffs outside of this case who have claims against WCD and other defendants related to talc use. Moreover, by publishing this information in an article Dr. Moline conveniently takes the position that any information related to the 33 Litigants she selected and reviewed for the Moline Article is confidential to prevent any inquiry or effective cross-examination into the plaintiffs she selected and relied on for her opinions.

## **CONCLUSION**

For these reasons and reasons set forth in the additional filings on this Motion, WCD respectfully requests this Court deny Northwell's Motion to Modify the WCD Subpoena and require Northwell to fully comply with the WCD Subpoena.

This 8th day of March 2023.

LANDMAN CORSI BALLAINE & FORD P.C.

By: *Janelle N. Winters*

Janelle N. Winters
Attorneys for Defendant
Whittaker, Clark & Daniels, Inc.
One Gateway Center, 22nd Floor
Newark, NJ 07102
Tel:  973-623-2700
Fax: 973-623-4496
    and
120 Broadway, 13th Floor
New York, New York 10271
Tel:  212-238-4800
Fax: 212-238-4848

7