# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 10036-4003
Tel: +1 212 556 2100
Fax: +1 212 556 2222
www.kslaw.com

Morton D. Dubin
Partner
Direct Dial: +1 212 790 5343
Direct Fax: +1 212 556 2222
mdubin@kslaw.com

May 3, 2023

**VIA ECF**

Hon Valerie Figueredo
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:   Gref v. Am Int'l Indus., et al., 20cv05589-GBD-VF

Dear Judge Figueredo,

      As national counsel for Johnson & Johnson, I respectfully submit this correspondence to provide additional information and context that we hope you will find useful in adjudicating the ongoing dispute in the above captioned matter over discovery related to Dr. Jaqueline Moline's 2020 publication entitled "Mesothelioma Associated With the Use of Cosmetic Talc" (the "Article" or "Moline Article").  From a review of the filings in this matter, it has come to my attention that one of the major tactics being used by Plaintiff's counsel to resist this critical discovery has been, ironically, to downplay the significance of the Moline Article to the rampant litigation and public debate over the safety of talcum powder use.  As discussed below, that portrayal is dramatically inconsistent with Johnson & Johnson's own litigation experience witnessing the Moline Article used as a cornerstone of talc mesothelioma cases across the country.  Indeed, in Johnson & Johnson's extensive experience, essentially every plaintiff-side medical expert in talc litigation now cites to and relies upon Dr. Moline's paper, which has been described by those same experts as one of the "main sources of information" supporting plaintiffs' claims that talcum powder is contaminated with asbestos and causes mesothelioma.  Dr. Moline has actively fomented the widespread reliance on her Article by acting as the asbestos bar's expert and proffering her findings in multiple forums, including before Congress.

May 3, 2023
Page 2

Given the extraordinary significance placed on the Moline Article by plaintiffs' counsel in case after case around the country, it is urgent thfcat Dr. Moline no longer be permitted to evade legitimate discovery into the truthfulness of her representations regarding the existence, or lack thereof, of alternative exposures to asbestos among the individuals discussed in her Article.

I. **Prior to Publication of the Moline Article, Her Causation Opinions Had Been Excluded or Limited by Several Courts**

Critical in any talc mesothelioma case are the twin questions: 1) whether the talcum powder product at issue, in fact, contained asbestos; and 2) whether the "dose" of any alleged exposure to the powder (and related asbestos contamination) was sufficient to cause the plaintiff's disease. *See, e.g., Parker v. Mobil Oil Corp.*, 7 N.Y.3d 434 (2006). Before publication of the Moline Article, plaintiffs' experts (include Dr. Moline) were routinely forced to concede that there was no epidemiological evidence linking exposure to cosmetic talc to mesothelioma even in highly exposed miners and millers of that talc. *See, e.g.*, Testimony of Dr. Moline in *Anderson* Trial Tr. 5/7/18 P.M., 1307:12-16 ("Q. The bottom line is there's no published epidemiology studies showing an increased risk of mesothelioma as a result of exposure to cosmetic talc; true, Doctor? A. Yes."); attached as **Exhibit A**. This admission was particularly damaging to Dr. Moline, who had previously testified that to determine whether a substance can cause disease you should "go to the mine or the mill where the product is being made and … look to see if there is disease in this mine or mill that's higher than you would expect in the population." Testimony of Dr. Moline in *Thoma* Trial Tr., 2/15/2012 at 1065:6-1065:10; attached as **Exhibit B**.

In an effort to back fill for this fatal lack of critical causation evidence, even prior to her publication, Dr. Moline repeatedly attempted to inject into cases her alleged "findings" from unspecified "other" medico-legal cases, which she claimed showed that women who had only been exposed to talcum powder develop mesothelioma. However, at that time (prior to her publication), Dr. Moline's efforts were largely rejected by courts on the grounds that it was improper for her to use allegations from separate lawsuits, which defendants may not have even been parties to, as support for her causation opinions.[1] Further, several courts found that Dr. Moline's causation opinions in talc cases, overall, lacked an adequate scientific basis and should therefore be excluded.[2] In *Nemeth v. Brenntag North America*, for example, the New York Court of Appeals excluded Dr. Moline's conclusory opinions that cosmetic talc causes mesothelioma because she failed to establish that the plaintiff was exposed to "sufficient levels of the toxi[n] to cause the

---

[1] *See, e.g., Fong et al. v. Johnson & Johnson, et al.*, No. BC675449 (Super. Ct. Ca., L.A. Cnty.); *Hayes v.Colgate-Palmolive Co., et al.*, No. 16-CI-003503 (Jefferson Cir. Ct., Ky.); *Olson et al. v. Brenntag North America, Inc., et al.*, No. 190328/2017 (Supr. Ct. N.Y., N.Y. Cnty.); *Pipes v. Johnson & Johnson, et al.,* No. CJ-2017-3487 (Dist. Ct., Okla. Cnty., Okla.); *Lanzo v. Cyprus Amax Minerals Co.*, et al., No. MID-7385-16 AS (Super. Ct. N.J., Middlesex Cnty.); *Weirick v. Brenntag N. Am., Inc.*, No. BC656425 (Super. Ct. Ca., L.A. Cnty.).

[2] *See, e.g., Lanzo v. Cyprus Amax Mins. Co.*, 467 N.J. Super. 476, 513 (N.J. App. Div. 2021); *Matter of New York City Asbestos Litig. (Olson)*, 207 A.D.3d 415, 416 (N.Y. 1st Dep't 2022); *Nemeth v. Brenntag N. Am.*, 38 N.Y.3d 336, 345 (2022).

illness" – a basic requirement in all toxic tort cases – and found that Dr. Moline's conclusory opinions were insufficient to meet that standard.[3]

## II. Dr. Moline Publishes Her Paper and Hails Its Significance

In 2019, no doubt in an effort to shore up her ability to testify in talc mesothelioma cases, Dr. Moline published the Article now at issue before this Court, which she describes as "the first large case series to identify cosmetic talcum powder contaminated with asbestos as the cause of malignant mesothelioma in cosmetic talc users." In the Article, Dr. Moline claims to "present[s] 33 cases of individuals with malignant mesothelioma who were exposed to commercial talcum powder products." Moline Article at 11. The number of cases featured by Dr, Moline – 33 – was not coincidence; the number was chosen to invoke the historical significance of a 1960 paper published by Dr. J.C. Wagner in which he reported on 33 cases of malignant mesothelioma among individuals who were exposed in and around crocidolite asbestos mines in South Africa. *Id.* That seminal paper is typically credited as the first epidemiological study linking asbestos to mesothelioma. *Id.*

As the Court already is aware, the Moline Article states multiple times that its subjects had no other exposure to asbestos apart from exposure to alleged asbestos contamination in cosmetic talcum powder. Indeed, as a North Carolina federal court recently explained, the premise that all 33 cases did not have other potential exposures to asbestos apart from talcum powder was the "principal factual underpinning of the article."[4] That same court also expressed grave concern about the "groundbreaking nature" and "widespread influence" of the Moline Article in light of evidence indicating that its fundamental premise was, in fact, false: Namely, the plaintiff in that case was included as one of the 33 subjects in the Article despite having herself alleged exposure to asbestos at her former job sites.[5] The North Carolina court further wrote that "[g]iven the *groundbreaking nature* of the article and its express premise that all individuals studied had no known alternative asbestos exposures, the fact that one of the individuals claimed otherwise has direct bearing on the study's credibility."[6]

Indeed, to the extent that Plaintiff's counsel in this case seek to minimize the significance of the Moline Article, such an argument is entirely inconsistent with Dr. Moline's own public statements about her work – statements which she made regularly and widely before the current efforts to uncover the truth about the factual underpinnings of her paper began. By way of example, shortly after the Moline Article became available online, Time magazine published an article entitled "A New Study Suggests Tainted Talcum Powder Can Cause a Rare Cancer. Here's How That Could Play Out in the Courtroom" (Oct. 15, 2019) (attached as **Exhibit C**). In that article, Dr. Moline is quoted saying: "This is the first time that anyone has said, 'Let me look at

---

[3] *Nemeth v. Brenntag N. Am.*, 38 N.Y.3d 336, 345 (2022).
[4] *Bell v. Am. Int'l Indus. et al.*, No. 1:17-CV-00111 (M.D.N.C. Sept. 13, 2022), ECF No. 398 at 22 (the "Bell Opinion").

[5] *Id*. at 2, 4, 17, 22.

[6] *Id.* at 17 (emphasis added)

all these cases, put it all together and identify the ones where [talc] is the sole exposure.'" She also stated that: "Everything points to cosmetic talc being the cause" of the Article's subjects' mesothelioma. *Id.* Dr. Moline similarly gave an interview for an article on Romper.com which was entitled "Contaminated Baby Powders May Be Linked To Rare Cancer, New Study Suggests" (Oct. 16, 2019) (attached as **Exhibit D**). Here, Dr. Moline is again quoted as saying that "All the folks in the study used cosmetic talc, usually for decades, and they all had mesothelioma with no other asbestos source." *Id.*

Of significant importance to Johnson & Johnson's own dealings with the Article and its significant impact in talc litigation, Dr. Moline also gave congressional testimony regarding her findings. Specially, on December 10, 2019, Dr. Moline testified before a House Subcommittee on talc and talc litigation. In her written testimony, Dr. Moline stated: "[M]y colleagues and I reported on 33 individuals with no other identifiable source of exposure apart from cosmetic talc." Written Testimony of Jacqueline Moline at 2 (attached as **Exhibit E**). She also repeated in her oral testimony: "This talc exposure was their only exposure to asbestos." Hearing Transcript at 8. Following Dr. Moline's testimony, the relevant Congressional Committee put out a press release listing among the "takeaways" from the hearing that "Dr. Jacqueline Moline testified that individuals who have only been exposed to asbestos through the use of talc-based Johnson & Johnson Baby Powder have developed mesothelioma."[7]

These limited examples merely scratch the surface of what has been a coordinated effort by Dr. Moline and the plaintiffs' bar to laud the significance of her findings both inside and outside of courtrooms across the United States, from every public facing platform they can find, for the intended purpose of persuading the American public – and juries across this country – of their position. A more complete rendition of these facts is set forth in a Complaint filed by LTL[8] against Dr. Moline in the United States Bankruptcy Court for the District of New Jersey (the "LTL Complaint"; attached as **Exhibit F**).

### III.  Other Plaintiffs' Experts Also Rely Heavily on Dr. Moline's Article

In addition to Dr. Moline's own efforts to highlight significant nature of her work, other plaintiffs' experts have routinely referenced the Article in numerous cosmetic talc trials across the country.[9] For example, Johnson & Johnson is aware of at least 20 other plaintiff-side talc litigation experts who have relied on the Moline Article in either their deposition or court disclosures: Drs. Brody, Castleman, Cohen, Compton, Dodson, Egilman, Emory, Finkelstein, Gordon, Haber, Horn, Kanarek, Kradin, Longo, Maddox, Madigan, Radecki, Rigler, Smith, Verschraegen, and Zhang.

---

[7] https://oversight.house.gov/news/press-releases/oversight-subcommittee-held-second-hearingon-
the-public-health-risks-of.

[8] LTL is a company created through a corporate restructuring of the former Johnson & Johnson Consumer Inc., and subsidiary if Johnson & Johnson.

[9] *See* Bell Opinion at 17-18.

May 3, 2023
Page 5

In fact, Plaintiffs' experts have gone so far as to describe the Moline Article as one of the "main sources of information" establishing that talcum powder causes mesothelioma.[10]

This use of the Moline Article has proven to be uniquely pernicious because such experts can utilize the Article while avoiding any discovery regarding the basis for Dr. Moline's statements since they, themselves, do not possess any of the relevant underlying documentation. Functionally, Dr. Moline's opinions based on her prior medico-legal consultations now have been doubly insulated: first by including them in anonymized fashion in her Article, and second by then having other experts with no knowledge of the underlying facts rely on the Article.

### IV.  Dr. Moline Should Not Be Permitted to Conceal Misstatements in Her Article

Johnson & Johnson will not belabor or repeat arguments that undoubtedly have already been made to this Court. However, it is abundantly clear – even despite persistent efforts to prevent defendants in talc litigation from uncovering the true facts underlying the Article – that Dr. Moline's representation that the 33 individuals reported on in the Article were exposed only to talcum powder is simply and knowingly false. The case of Betty Bell, which is discussed in the Bell Opinion, is but one example. Others examples that Johnson & Johnson already is aware of are further discussed in the LTL Complaint.

Put simply, the importance of this issue cannot be overstated. Dr. Moline, and others relying on her Article, have pointed the finger at cosmetic talc as the cause of mesothelioma in hundreds of men and women, and the number of cases is growing. Dr. Moline has to date avoided her assertions being challenged by claiming confidentiality, even though (1) the information on which she relies comes from litigation in which she was a disclosed expert, and (2) the plaintiffs in those litigations knew their medical information would be publicly shared as part of their lawsuits. Dr. Molines baseless, continued objections are nothing but a smokescreen to avoid legitimate inquiry into the basis for and veracity of her Article.

Ultimately, on this critical matter, the truth – and not Dr. Moline's fictionalized accounts - should be allowed to prevail.

Sincerely,

Morton D. Dubin
Partner

---

[10] *Shawn Johnson v. Johnson & Johnson, et al*, (LASC) September 7, 2021 Transcript of Proceedings at 4861:25-4862:16 (relevant excerpts attached as **Exhibit G**).