UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

BRIAN JOSEPH GREF,

                    Plaintiff,

     -against-

AMERICAN INTERNATIONAL INDUSTRIES,
*individually and as sucessor-in-interest for the*
CLUBMAN BRAND, and to THE NESELMUR
COMPANY and PINAUD COMPANY, et al.,

                   Defendants.

-----------------------------------------------------------------------x

CIVIL ACTION NO.
1:20-cv-05589-GBD-DCF


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' JOINT MOTION TO
PRECLUDE PLAINTIFF'S SUPPLEMENTAL EXPERT DISCLOSURES**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND .................................................................................................................... 3

    A.    Dr. Jacqueline's Moline's Initial Expert Report and Deposition............................ 3

    B.    Plaintiff Withdraws the Moline 2020 Article, Only to Substitute the Moline 2023 Article ...................................................................................................................................... 5

    C.    Plaintiff's "Supplemental" Expert Disclosures and Reports ................................... 6

    D.    Dr. Moline's 2023 Article Suffers from the Same Infirmities as her 2020 Article .. 7

ARGUMENT ....................................................................................................................... 11

I.    THE MOLINE 2023 ARTICLE WAS NOT TIMELY DISCLOSED AND SHOULD BE PRECLUDED ....................................................................................................................... 11

    A.    Legal Standard ....................................................................................................... 11

    B.    Plaintiff Has No "Substantial Justification" for His Failure to Timely Disclose the 2023 Article ........................................................................................................................... 12

    C.    Plaintiff's Untimely Disclosure Is Not "Harmless"................................................ 13

II.    THE COURT SHOULD PRECLUDE DR. MOLINE 2023 ARTICLE AS UNRELIABLE ....................................................................................................................... 14

    A.    The Moline 2023 Article Is Not A Reasonably Reliable Expert Reference ........... 14

    B.    Dr. Moline's Failure to Discuss Her Papers Deprives Defendants of Meaningful Cross-Examination....................................................................................................................... 16

    C.    Dr. Moline Lacks the Qualifications to Opine on Alleged Trace Contamination .. 17

    of Cosmetic Talc With Asbestos.................................................................................... 17

    D.    The Introduction of the 2023 Moline Article Paper at Trial Would Result In Undue Prejudice to Defendants ................................................................................................. 19

III.    THE COURT SHOULD ALSO PRECLUDE DR. MOLINE'S LATE OFFERED DOSE ASSESSMENT AS AN UNTIMELY AND IMPROPER SUPPLEMENTATION ........ 20

IV.    THIS COURT SHOULD PRECLUDE PLAINTIFF'S PREVIOUSLY UNDISCLOSED EXPERT OPINIONS AND REPORTS............................................................................... 21

    A.    Dr. William Longo ................................................................................................. 21

    B. Dr. Mark Krekeler ................................................................................................. 22

    C. Dr. Arnold Brody ................................................................................................. 23

CONCLUSION ..................................................................................................................... 23

i

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Baptiste v RLP-East, LLC*, 182 A.D.3d 444, 444 (1st Dept. 2020) ...............................................17

*Bell v. American International Industries*, 627 F. Supp. 3d 520, 2022 WL 16571057, (M.D.N.C Sept. 13, 2022) .............................................................................................................................8,16

*Brandt v. The Bon-Ton Stores, Inc.*, 2017 WL 4271039, at *8–9 (Pa. Com. Pl. Sept. 25, 2017)..18

*Cedar Pharm., Inc., v. Dongbu Hannong Chem. Co., Ltd.*, 769 F. Supp. 3d 269, 279 (S.D.N.Y. 2011) .................................................................................................................................3,20

*Dandy v. Ethicon Women's Health and Urology*, 579 F. Supp. 3d 625 (D.N.J. 2022) ............12,13

*Daum v. Auburn Mem. Hosp.*, 198 A.D.2d 899 (4th Dept. 1993) ..................................................17

*DiScala v. Charles B. Chrystal Co.*, 173 A.D.3d 573 (1st Dep't 2019) .......................................3,4

*Escalera v. New York City Hous. Auth.*, 425 F.2d 853, 862 (2d Cir. 1970) .................................16

*Hanson v. Colgate-Palmolive Co.*, 353 F. Supp. 3d 1273, 1298 (S.D. Ga. 2018).......................3,4

*Jackson v. Colgate-Palmolive Co.*, No. CV 15-01066 (TFH), 2019 WL 3603547......................18

*Levinson v. Westport Nat'l Bank*, 2013 WL 3280013, at *5 (D.Conn.2013)................................20

*Matter of Brandon's Est.*, 55 N.Y.2d 206, 210–11, 433 N.E.2d 501, 503 (1982) ........................19

*Matter of James Wilson Assocs.*, (1992 7th Cir.) 965 F.2d 160, 172-73 ......................................18

*Matter of N.Y.C. Asbestos Litig.*, No. 190328/17, 171 N.Y.S.3d 503 (N.Y. App. Div. 1st Dep't, 2022) ..................................................................................................................................3,4

*Matter of N.Y.C. Asbestos Litig.*, 116 N.E.3d 75 (N.Y. 2018)....................................................3,4

*Nemeth v. Brenntag N.A., Inc.*, 38 N.Y.3d 336 (2022) .........................................................3,4,15

*Robinson v. Ethicon Inc.*, 2021 WL 4034131 (S.D. Tex. Sept. 2, 2021).....................................12

*Stuhlmacher v. Home Depot USA, Inc.*, 2012 WL 5866297.........................................................20

*United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008) ...........................................................18

*Thieriot v. Jaspan Schlesigner Hoffman LLP*, 07-CV-5313 (DRH)(AKT) (E.D.N.Y. Nov. 10, 2016) .............................................................................................................................................11

*Ventra v. United States,* 121 F.Supp.2d 326, 332 (S.D.N.Y. 2000) ..............................................21

*Weiss v. Albertson's Companies Inc.*, et al., CV 2021-090946 (Ariz. Super. Ct. June 23, 2023) ..................................................................................................................................................2,3,15

*Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1062 (9th Cir. 2004).......................................21

*Yeti By Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106-1107 (9th Cir. 2001) ..........11

*Zakaria v. Gerber Prods. Co.,* (2017 C.D. Cal.) 2017 WL 9512587 ............................................18

## **Rules**                                                                                           **Page(s)**

Fed. R. Civ. P. 26......................................................................................................................3,6,11

Fed. R. Civ. P. 37........................................................................................................................11,21

Fed. R. Evid. 403 ............................................................................................................................19

Fed. R. Evid. 702 ............................................................................................................................14

Fed. R. Evid. 703 ............................................................................................................................14

## PRELIMINARY STATEMENT

Plaintiff has repeatedly sought to shield their proffered medical expert, Dr. Jacqueline Moline, from meaningful cross-examination through a series of bait-and-switches. When discovery in another lawsuit revealed that the core premise of Dr. Moline's 2020 Article[1]—that the "subjects" had no identified asbestos exposures other than talcum powder—was false, defendants here sought discovery into Dr. Moline's underlying data. To avoid an adverse ruling on that issue, Plaintiff's attorneys represented to the Court that they were withdrawing the 2020 Article from Dr. Moline's reliance materials. However, Plaintiff's withdrawal of the 2020 Article has proven to be a sham. Plaintiff now seeks to supplement Dr. Moline's reliance materials with a 2023 Article[2] that relies on the same faulty data. Rather than streamline the case, as this Court correctly observed at the July 6, 2023 hearing, this belated attempt to supplement the record sets discovery in this case back to "square one." Dr. Moline, and other experts proffered by Plaintiff, including Dr. Finkelstein, should be precluded from relying on the 2023 Article for multiple reasons.

*First*, Plaintiff failed to timely disclose it. Expert reliance materials were due last fall, in advance of expert depositions. And while Plaintiff has known about the 2023 Article's publication since January, rather than promptly amend their reliance materials, Plaintiff waited until May to simultaneously withdraw the 2020 Article and announce Dr. Moline's intent to rely on the 2023 Article, in a transparent attempt to moot a subpoena. Plaintiff's counsel's gamesmanship does not warrant an exception to this Court's discovery schedule. Moreover, permitting untimely

---

[1]   "*Mesothelioma Associated with the Use of Cosmetic Talc,*" Journal of Occupational Medicine, Vol. 62, No. 1, Jan. 2020 ("Moline 2020 Article")

[2]   "*Exposure to Cosmetic Talc and Mesothelioma,*" Journal of Environmental Medicine and Toxicology, Vol. 18, No. 1, January 2023 ("Moline 2023 Article").

supplementation now would unfairly prejudice Defendants, who prepared their expert defense based on Dr. Moline's original report and reliance materials.

**Second**, like her 2020 Article, Dr. Moline's 2023 Article is nothing more than attorney advocacy masquerading as science. As this Court knows, last year, a federal district court revealed that one of Dr. Moline's "subjects" was Betty Bell, a Plaintiff who worked for decades in two textile factories at which she claimed asbestos exposure in two workers compensation cases. Dr. Moline has refused to identify the other "subjects" of her articles, making it impossible for Defendants to determine how many others had known asbestos exposures.[3] What is clear, however, is that Dr. Moline did nothing to independently verify the exposure histories of the "subjects," relying instead on documents and testimony cherry picked for her by plaintiffs' lawyers. Multiple courts have excluded Dr. Moline's articles and related opinions, holding that they provide "no reliable, scientific support for the notion that asbestos in talc causes mesothelioma."[4]

Plaintiff has sought to shield Dr. Moline from discovery in other ways as well. As Mennen previously outlined for the Court, Dr. Moline's original expert report did not include any calculation or other scientific expression of Mr. Gref's purported exposure levels, as required by New York law. Indeed, during the first day of Dr. Moline's deposition, she confirmed that she did not intend to offer any exposure assessment for Mr. Gref. During Dr. Moline's second day of deposition, however, defendants were ambushed when Dr. Moline for the first time offered dose estimates ostensibly quantifying the alleged asbestos fibers per cubic centimeter of air purportedly released from each of the talcum powder products to which Mr. Gref was allegedly exposed. Now,

---

[3] Nonetheless, Defendants have been able to piece together and identify other subjects in the 2020 Article, including Doris Jackson (add others) whose medical records from their treating physicians indicated other, more logical exposures to asbestos-containing products.

[4] Ex. 1, Order, Weiss v. Albertson's Companies Inc., et al., CV 2021-090946 (Ariz. Super. Ct. June 23, 2023) at 23.

Plaintiff seeks to introduce a new "supplemental" report from Dr. Moline reflecting exposure opinions that inexplicably differ from those she offered during her deposition. Courts routinely preclude efforts by experts "to fill a significant and logical gap in the first report" through supplementation where, as here, the information necessary to offer the new opinion was available to the expert when the original report was written. *Cedar Pharm., Inc., v. Dongbu Hannong Chem. Co., Ltd.*, 769 F. Supp. 2d 269, 279 (S.D.N.Y. 2011)

Finally, although the Court directed Plaintiff to supplement his disclosures *as to Dr. Moline* so that the admissibility of Dr. Moline's new reliance materials and opinions could be briefed on a clear record, Plaintiff used this directive as an opportunity to supplement other, unrelated expert reports. Specifically, on August 4, 2023, Plaintiff served updated disclosures from Drs. William Longo, Mark Krekeler, and Arnold Brody. Plaintiff did so without seeking leave of the Court to extend disclosure deadlines, in clear violation of both Rule 26 and the Court's carefully crafted scheduling order.

For all of these reasons, and the reasons set forth below, Plaintiff's "supplemental" reports should be stricken, and the 2023 Moline Article and Dr. Moline's exposure calculations should be excluded.

## BACKGROUND

### A.     Dr. Jacqueline's Moline's Initial Expert Report and Deposition

Dr. Jacqueline Moline is a prolific causation expert proffered by plaintiffs in asbestos-related litigation. Courts across the country have, however, recently begun rejecting and excluding her opinions as speculative and unscientific.[5]

---

[5] Ex. 1, Order, *Weiss v. Albertson's Companies Inc.*, et al., CV 2021-090946 (Ariz. Super. Ct. June 23, 2023); *Hanson v. Colgate-Palmolive Co*., 353 F. Supp. 3d 1273, 1298 (S.D. Ga. 2018) (excluding the causation opinions of Dr. Moline). Similarly, NY courts at the appellate level have rejected Dr. Moline's opinions four times,

On December 15, 2021, pursuant to the Court's deadline for Plaintiff to serve medical expert reports (ECF No. 161), Plaintiff served Dr. Moline's October 28, 2021 report.[6]  Although Dr. Moline offers a myriad of opinions as to the cause of Plaintiff's disease, her report suffered from the same defects that caused other courts to exclude her causation opinions.  Specifically, it failed to offer any quantitative "dose" of asbestos calculations specific to Mennen or any other Defendant's products.

Dr. Moline appeared for deposition on July 6, 2022 and September 23, 2022.[7]  During the first day of deposition, Dr. Moline affirmatively testified, consistent with her report, that she had not conducted nor was not offering any Defendant-specific dose quantification assessments.[8]  However, during her second day of deposition on September 23, 2022, after Defendants had completed their examination, Plaintiff's attorney, James Kramer, conducted a redirect during which Dr. Moline ambushed the defendants by offering unqualified and incompetent "dose" calculations, in which she purported to quantify the numbers of asbestos fibers per cc of air released from each of the talcum powder products that Mr. Gref used during his lifetime.[9]  Though Dr. Moline is not an industrial hygienist, she purportedly performed these calculations a week prior to her deposition.  Nonetheless, Plaintiff's counsel did not disclose them in advance of the deposition, meaning defense counsel had no opportunity to prepare questions regarding the new opinions.[10]

---

including by the Court of Appeals in *Juni* and *Nemeth*. *See Matter of N.Y.C. Asbestos Litig.*, 116 N.E.3d 75 (N.Y. 2018) ("Juni"); *Nemeth v. Brenntag N.A., Inc*., 38 N.Y.3d 336 (2022) ("Nemeth"); *Matter of N.Y.C. Asbestos Litig.*, No. 190328/17, 171 N.Y.S.3d 503 (N.Y. App. Div. 1st Dep't , 2022) ("Olson"); *DiScala v. Charles B. Chrystal Co*., 173 A.D.3d 573 (1st Dep't 2019) ("DiScala")

[6] Ex. 2, Dr. J. Moline Report, dated October 28, 2021.
[7] Ex. 3 and Ex. 4, Depo. Trans. Dr. J. Moline Vol. I and II, respectively.
[8] Ex. 3, Depo. Trans. Dr. J. Moline Vol. I, 132:25-134:4, 135:16-136:23, 154:4-15, 171:20-172:9.
[9] *See* Ex. 4, Depo Trans. Dr. J. Moline Vol. II at p. 296.
[10] *Id.* at pp. 273-274.

After eliciting these new opinions, Plaintiff's counsel abruptly ended Dr. Moline's deposition, without affording Mennen the opportunity to cross-examine her about them.[11] Following unsuccessful efforts to meet and confer with Plaintiff on this issue, Defendants filed a joint motion to compel the continuation of Dr. Moline's deposition, which Plaintiff opposed. (ECF 263 and 282).

### B.     Plaintiff Withdraws the Moline 2020 Article, Only to Substitute the Moline 2023 Article

As the Court is familiar with the separate, extended discovery dispute regarding the identities of the "subjects" in Dr. Moline's 2020 Article, Mennen will describe it here only briefly. On May 4, 2023, after extensive briefing and multiple conferences regarding the A-I-I subpoena, Plaintiff advised the Court (ECF 337) that Plaintiff would, for the sake of "efficiency," withdraw the 2020 article and that Plaintiff's experts would not rely on it.[12]  Plaintiff also agreed to produce Dr. Moline for a limited, three (3) hour deposition on her dose calculations and any relevant literature she was relying on that she had authored since the date of her deposition.  During a telephonic conference before the Court on May 19, 2023, based on Plaintiff's representation that Dr. Moline would not be relying upon the 2020 Article, the Court held that discovery into the identity of the subjects of the article was not relevant and quashed the subpoena.

During that same May 19th conference, Plaintiff's counsel revealed for the first time that Dr. Moline would be relying on a different, previously undisclosed, article that she published in January of 2023 that appears to contain the same flaws as her 2020 Article.  Defendants objected to the introduction of the new Article as untimely, and the Court instructed the parties to meet and confer regarding the 2023 Article.  The parties conferred on June 6, 2023, but reached an impasse.

---

[11] Ex. 4, Depo. Trans. of J. Moline Vol. II, p. 311.
[12] Ex. 5, Letter from Plaintiff's counsel to Hon. Valerie Figueredo, dated May 4, 2023 (ECF 337 and 339).

Mennen filed a letter motion dated June 29, 2023 (ECF No. 376) seeking a discovery conference with the Court to address issues pertaining to the admissibility of Dr. Moline's new 2023 article as well as her late-offered quantitative dose calculations, neither of which was properly or timely disclosed under Fed. R. Civ. P. 26.

The Court conducted a telephonic conference on July 6, 2023 and correctly observed that Plaintiff had "substituted one article for another one that has the same exact issues" placing the parties back at "square one," with another subpoena served by A-I-I and another motion to quash filed by Northwell.  (ECF No. 387.)  Defendants noted that Dr. Moline's 2023 Article was published on January 18, 2023, and despite numerous opportunities over a period of several months, Plaintiff did not attempt do update their disclosures or otherwise put the parties or the Court on notice of their intent to rely upon the 2023 Article until four months later, in May.  Indeed, Plaintiff revealed the 2023 Article only after being forced to withdraw the 2020 Article or risk an order requiring discovery into the article's underlying data.  Defendants also objected to Dr. Moline's untimely dose quantification calculations, which Dr. Moline failed to disclose before her deposition and which Plaintiff still had never submitted through an amended or supplemental report.  The Court agreed that Plaintiff had not adhered to Rule 26 and directed Plaintiff to supplement their disclosures on these issues so that the Defendants could, if desired, move to exclude the late disclosures on a complete record.

C.    **Plaintiff's "Supplemental" Expert Disclosures and Reports**

On August 1, 2023, Plaintiff served Dr. Moline's "supplemental" report, dated July 27, 2023.[13]  In this new report, Dr. Moline purports to have performed a "dose assessment" directed to the Mennen products Mr. Gref allegedly used, in which she estimated that Mr. Gref had a

---

[13] Ex. 6, Supp. Report of Dr. J. Moline, dated July 27, 2023.

lifetime exposure to asbestos from his consumer use of those products of 0.03 fibers/cc.[14]  The supplemental report does not explain why this figure differs from the calculated figure that Dr. Moline offered during the second day of her deposition, during which she estimated exposures of 0.04 fibers/cc for Mennen.[15]

Plaintiff further served declarations from Dr. Moline[16] and another Plaintiff's expert, Dr. Murray Finkelstein,[17] stating their intent to rely on Dr. Moline's 2023 Article for their opinions.

Finally, though this Court only requested supplemental disclosures regarding Dr. Moline and her article, Plaintiff also took the uninvited opportunity to serve an updated disclosure for Dr. William Longo, which reveals a substantial volume of new product testing.  Plaintiff's original declaration from Dr. Longo listed a single test report (MAS Project M71518) that described testing on just three (3) Mennen containers,[18] and during Dr. Longo's deposition, Plaintiff's counsel confirmed on the record that **"[Longo] will not be relying on any other Mennen testing other than M7518 (sic) for the Gref matter."**[19]  Contrary to this representation, Dr. Longo's newly produced reliance materials includes an additional five reports, relating to an additional eighteen (18) Mennen containers, more than 20 months after the Court's deadline for providing such materials[20].

### D.    Dr. Moline's 2023 Article Suffers from the Same Infirmities as her 2020 Article

As the Court correctly pointed out at the July 2023 conference, Plaintiff has swapped one article (Moline 2020 Article) for another one (Moline Article 2023) that raises exactly the same issues.  Dr. Moline claims that the 166 plaintiffs who served as "subjects" for the 2023 Article

---

[14] *Id.* at p.8.
[15] Ex. 4, Depo Trans. Dr. J. Moline Vol. II at p. 295: 17-296:6
[16] Ex. 7, Declaration of Dr. J. Moline, dated July 28, 2023.
[17] Ex. 8, Declaration of Dr. M. Finkelstein, dated August 1, 2023.
[18] Ex. 9, Declaration of Dr. W. Longo, dated March 31, 2022.
[19] Ex. 11, Depo. Trans. W. Longo, Vol. I, p. 13.
[20] Ex. 10, Declaration of Dr. W. Longo, dated August 1, 2023.

"had substantial asbestos exposure to cosmetic talc products as well as some who had potential or documented additional exposures to other asbestos-containing products and who subsequently developed mesothelioma."[21]   Dr. Moline further claims that "[i]n 122 cases, the only known exposure to asbestos was from cosmetic talc."[22]

However, the record shows Dr. Moline did not exercise any scientific rigor in evaluating these plaintiffs' potential exposures.   She did not, for example, interview any of the subjects or their family members, nor did she investigate the workplaces from the subjects' work histories, as would be her practice outside of litigation.[23]   Rather, to determine exposure, she relied exclusively on deposition transcripts and medical records cherry-picked for her by the various plaintiffs' lawyers.[24]

Critically, the core premise of the 2023 Articles—that 122 "subjects" had no identified asbestos exposures other than talcum powder—is demonstrably false.   As detailed further in many of the submissions to this Court, last year a federal district court revealed that one of the "subjects" from both articles was Betty Bell, a Plaintiff who worked for decades in two textile factories where asbestos was extensively used.   *Bell v. American International Industries*, 627 F. Supp. 3d 520, 2022 WL 16571057, (M.D.N.C Sept. 13, 2022).   Dr. Moline admittedly did not make any modifications to her 2023 manuscript in light of the *Bell* opinion, and in fact has not even read the full opinion.[25]   As Dr. Moline has refused to identify the other "subjects" of her Articles, and has taken additional steps to further shield the identities of the new subjects of the 2023 Article, it is impossible for defendants to determine how many others had known asbestos exposures.

---

[21] Ex. 12, Moline, J. et al., "*Exposure to Cosmetic Talc and Mesothelioma,*" Journal of Environmental Medicine and Toxicology, Vol. 18, No. 1, January 2023, at 1.
[22] *Id.*
[23] Ex. 13, Moline Depo. (March 10, 2023) at 61:6-17; 65:1-17.
[24] *See id.*; Ex. 12 at 2.
[25] Ex. 14, Moline Depo. (March 23, 2023) at 92:3-16.

Tellingly, Dr. Moline did not seek to publish her article in a reputable journal.  Instead, her 2023 Article was published in the Journal of Occupational Medicine and Toxicology, a European for-profit, "pay-to-publish" journal.[26]  The journal itself advertises "fast and convenient online submission" and "rapid publication and acceptance," rather than the typical extended period of validation by peer reviewers.[27]  Indeed, Dr. Moline admits that she and her co-authors paid a $2,790 fee to have the 2023 Paper published.[28]

Even if such a pay-to-publish journal could be relied upon for meaningful peer review, Dr. Moline made any independent validation of her findings impossible by withholding her data from peer reviewers.  The only materials submitted to the journal (and the peer-reviewers) were a manuscript and cover letter.[29]  Therefore, the peer reviewers did not have the benefit of double-checking Dr. Moline's work or verifying any of her purported conclusions.  Even Dr. Moline's co-authors have been kept in the dark and impeded from conducting any independent investigation to confirm the veracity of Dr. Moline's claims.  Dr. Moline admitted that co-author Arthur Frank, also a serial plaintiffs' expert in asbestos cases whose job it was to review the information underlying the cases presented in the 2023 paper, was **<u>only</u>** provided with exposure histories prepared by Dr. Moline—he was not provided with any interrogatory responses, deposition transcripts, or medical records.[30]  Dr. Frank was also not provided with any defense expert reports from any of the subjects' cases he reviewed for the 2023 Paper.[31]  Additionally, despite being an author of the paper, any identifying information of the subjects was redacted for Dr. Frank's

---

[26] Ex. 14, Moline Depo. (March 23, 2023) at 98:9-13.
[27] Ex. 14, Moline Depo. (March 23, 2023) at 99:12-19; Ex. 12, Moline, J. et al., "*Exposure to Cosmetic Talc and Mesothelioma*," Journal of Occupational Medicine and Toxicology, Vol. 18, No. 1, January 2023, p. 13.
[28] Ex. 14, Moline Depo. (March 23, 2023) at 98:18-20.
[29] Ex. 14, Moline Depo. (March 23, 2023) at 101:24-102:3.
[30] Ex. 14, Moline Depo. (March 23, 2023) at 94:13-20.
[31] Ex. 14, Moline Depo. (March 23, 2023) at 94:21-24.

review.[32]  Presumably this willful blindness was done so Dr. Frank could be ignorant of the facts if he were ever deposed on his role in the 2023 paper.

Dr. Moline has, moreover, purposefully obscured the source of her data to prevent defendants from determining who the "subjects" are, and thereby challenging her claims regarding exposure.  The Journal of Occupational Medicine and Toxicology has a nominal "open source" data policy, stating that the journal "strongly encourages that all datasets on which the conclusions of the paper rely should be available to readers" and that all authors must include an "Availability of Data and Materials" section in their manuscript "detailing where the data supporting their findings can be found."[33]  However, Dr. Moline has chosen to keep all of the underlying data secret.  The 2023 Paper states that "datasets generated and/or analyzed during the current study are not publicly available.  Individuals of details [sic] of cases will not be provided to protect the confidentiality of the cases presented in the study.  Efforts to minimized [*sic*] identification, such as describing age in a range were employed."[34]  Also, in a departure from the 2020 Paper, Dr. Moline did not include a product key in the 2023 Paper, meaning it is unclear what talcum powder products the various plaintiffs purportedly used.[35]  Dr. Moline's choices reflect a calculated effort to shield the 2023 Paper from any type of scrutiny, whether from peer reviewers, fellow scientists, defendants, the judges who must scrutinize the reliability of her testimony, or triers of fact.

Similar to the Moline 2020 Article, Defendants have again been prevented from exploring the reliability or methodology of the opinions in the 2023 Moline Paper because Dr. Moline refuses to answer basic questions about the 166 subjects she purports to rely on for her analysis.[36]

---

[32] Ex. 14, Moline Depo. (March 23, 2023) at 95:15-21.
[33] *See* https://www.biomedcentral.com/getpublished/research-data.
[34] Ex. 12, Moline, J. et al., "*Exposure to Cosmetic Talc and Mesothelioma*," Journal of Occupational Medicine and Toxicology, Vol. 18, No. 1, January 2023, p. 11; *see also* Ex. 14, Moline Depo. (March 23, 2023) at 96:14-20.
[35] Ex. 14, Moline Depo. (March 23, 2023) at 91:15-24.
[36] Ex. 13, Moline Depo. (March 10, 2023) at 56:2-8.

Defendant A-I-I has once again served a subpoena on Northwell seeking a list of names of the litigation cases in the Moline 2023 Article.[37]  In response, Northwell filed a motion to quash A-I-I's subpoena on June 14, 2023.  (See ECF Nos. 364, 365, and 366.)  A-I-I opposed the motion and cross moved for an order seeking to enforce the subpoena.  (ECF No. 391).

## ARGUMENT

### I.   THE MOLINE 2023 ARTICLE WAS NOT TIMELY DISCLOSED AND SHOULD BE PRECLUDED

#### A.   Legal Standard

Fed. R. Civ. P. 26(a)(2), "requires disclosure of any document considered by a testifying expert . . . regardless of whether the expert expressly relies upon the document in formulating his or her opinion." *Thieriot v. Jaspan Schlesigner Hoffman LLP*, 07-CV-5313 (DRH)(AKT) (E.D.N.Y. Nov. 10, 2016) (citations and internal quotation marks omitted).  Fed. R. Civ. P. 26(e) expands Rule 26(a) by requiring a party to supplement the expert disclosures in a timely manner if the disclosure is incomplete or incorrect and the additional information has not been made known to the parties during discovery.  Fed. R. Civ. P. 37(c)(1) gives teeth to the expert disclosure requirements of Fed. R. Civ. P. 26(a)(2) "by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti By Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106-1107 (9th Cir. 2001).  Rule 37(c)(l)'s language is clear:

> A party that without **substantial justification** fails to disclose information required by Rule 26(a) . . . is not, unless such failure is **harmless**, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed . . . .

This rule acts as a "self-executing . . . and automatic sanction to provide a strong inducement for disclosure of material." *Yeti*, 259 F.3d at 1106 (citations and internal quotation marks omitted).

---

[37] Ex. 15 A-I-I's Subpoena directed to Non-Party Northwell Health, Inc., issued May 25, 2023.

**B.  Plaintiff Has No "Substantial Justification" for His Failure to Timely Disclose the 2023 Article**

The record shows that Plaintiff has no "substantial justification" for his failure to timely disclose Dr. Moline's 2023 Article.  Plaintiff has been fully aware of the article's publication since January of 2023.  In the months that followed, there were numerous opportunities for Plaintiff to disclose to the Court and to defendants his intent to rely upon the article, as the parties were actively litigating issues related to Dr. Moline's 2020 Article throughout the winter and spring. For example, the Court held oral argument on February 8, 2023 concerning Northwell's and A-I-I-s motions relating to the Moline 2020 Article; three joint status letters to the Court were on February 28, 2023, March 17, 2023, and April 20, 2023 (ECF Nos. 310, 335, 316, 322, and 326); and a telephonic conference regarding these issues was held on April 27, 2023.  Though the 2023 Article was clearly pertinent to those discussions, Plaintiff failed to mention the article at any of those junctures.

Indeed, even on May 4, 2023, when Plaintiff advised the Court by letter (ECF 337) that it intended to withdraw the 2020 article for the sake of "efficiency," Plaintiff failed to mention that Dr. Moline intended to rely on a 2023 Article *that raised the exact same issues*.  Instead, Plaintiff waited until the Court's May 19, 2023 status conference, where he successfully sought and obtained dismissal of A-I-I's subpoena, to announce his intent to rely upon the 2023 Article. Plaintiff's transparent attempt to moot a subpoena by replacing the 2020 Article with the 2023 Article is pure gamesmanship, and courts routinely decline belated requests to supplement the record in analogous circumstances.  *See Robinson v. Ethicon Inc.*, 2021 WL 4034131 (S.D. Tex. Sept. 2, 2021) (court denied Plaintiff permission to supplement due to prior knowledge of the scientific article, noting that their delay was "more akin to gamesmanship than timely supplementation."); *Dandy v. Ethicon Women's Health and Urology*, 579 F. Supp. 3d 625 (D.N.J.

2022) (expert's supplemental report was precluded as expert could have included his new opinions in the original reports despite existence of one single article post-dating his initial reports).

### C.      Plaintiff's Untimely Disclosure Is Not "Harmless"

Additionally, Plaintiff falls woefully short of meeting his burden of establishing that his failure to timely disclose is "harmless."  Defendants developed their expert defenses in this case based on Dr. Moline's report and reliance materials; allowing Plaintiff to introduce new scientific evidence (to the extent Dr. Moline's report can be characterized as such) without providing defendants' experts an opportunity to respond would prejudice the Defendants.  Moreover, while Plaintiff has offered to produce Dr. Moline for a limited deposition, that invitation does not cure the fact that Defendants are precluded from meaningfully responding to Dr. Moline's new opinions as Dr. Moline is again attempting to prevent disclosure of the subjects' identities.  Additionally, the parties have already extended substantial resources litigating issues related to Dr. Moline's 2020 Article.  Requiring defendants to relitigate all of those issues at substantial expense in the context of this new 2023 Article would further prejudice the defendants.

Notably, Plaintiff cannot plausibly claim prejudice if this Article were to be precluded.  Plaintiff's counsel represented to the Court at the May 19, 2023 conference, when withdrawing the Moline 2020 Article, that there are "many, many articles in the medical and scientific literature connecting not only asbestos to this cancer, but low levels of asbestos" and "articles discussing fiber levels released by asbestos in cosmetic talc in which Dr. Moline had no hand in writing or researching."  (ECF No. 352, p. 7). Based on Plaintiff's own representations, Plaintiff does not need to have Dr. Moline nor any other expert rely on the 2023 Article.

## II.  THE COURT SHOULD PRECLUDE DR. MOLINE 2023 ARTICLE AS UNRELIABLE

The Court should further preclude all evidence, argument, and reference to Dr. Moline's 2023 Article as it is not reliable expert reliance material, but is rather litigation advocacy masquerading as science.  Indeed, Dr. Moline's article represents an effort by a litigation expert to bolster her own opinions as to causation, while shielding those same opinions from scrutiny.  Mennen's inability to verify or explore the veracity of Dr. Moline's contentions, and thus the reliability of her article, warrant its exclusion.

### A.      The Moline 2023 Article Is Not A Reasonably Reliable Expert Reference

Under Federal Rule of Evidence 702, an expert may provide opinion testimony at trial only if the testimony "is based on sufficient facts or data" and is "the product of reliable principles and methods."  Fed. R. Evid. 702.  Although an expert may base his or her opinion on inadmissible facts and data, those facts and data must be "of a type reasonably relied upon by experts in the particular field."  Fed. R. Evid. 703.  Multiple courts have concluded that Dr. Moline's articles do not satisfy this standard.

In *Smith v. Albertsons Companies*, for example, the coordinated asbestos court in Alameda County analyzed the same issue that is presented here, but with respect to the Moline 2020 Article. There, the Honorable Jo-Lynne Q. Lee reasoned in part that the Moline Paper "is not 'of a type' reasonably relied upon by experts in the field," and granted a similar motion.[38] Judge Lee reasoned that, contrary to most scientific research, Dr. Moline and her co-authors:

> Are relying upon opinion and data collected by others.  In other words, the authors of the Moline [Paper] have not conducted any research of their own; they are simply relying upon hearsay information and/or data; this is hearsay within hearsay. . . . In this case there is no way of determining which documents, medical records, or other materials that the authors of the Moline

---

[38] Ex. 16, April 8, 2022, Tentative Ruling of Judge Lee in *Smith*, at 7.

> [Paper] were provided and what data from those materials they chose to include or omit from the study. The court notes that the source materials are unidentified litigation documents, with the exception of the tissue digestions performed on six of the 33 subjects. Although the Moline [Paper] contends that there are 33 cases that were part of this study, only six cases are actually discussed in any detail and it's unknown what the exact criteria was used in selecting the six cases discussed or the 33 alluded to out of an unknown larger universe of potential cases.[39]

The Honorable Brad Seligman was eventually assigned as the trial judge for *Smith* and adopted Judge Lee's ruling.[40]

Similarly in *Weiss v. Albertson's Companies Inc.*, a court in Arizona excluded Dr. Moline's opinions,[41] including her opinions regarding her 2020 and 2023 Articles, explaining that the articles are "completely irrelevant" and "provide no reliable, scientific support for the notion that asbestos in talc causes mesothelioma."[42] As the *Weiss* Court explained:

> Dr. Moline's own case series do not demonstrate a causal link between talcum powder and mesothelioma. Both of her case series involved patients who had mesothelioma. There certainly was no comparison to a "control group." Dr. Moline did not conduct a rigorous scientific analysis of the cause of the disease in the subjects of her studies. Indeed, she appears to have paid little, if any, attention to alternative causes.
>
> Dr. Moline's approach appears to be that, if she finds that a person who has mesothelioma was exposed to asbestos in talc, she concludes that the talc asbestos was the cause of the mesothelioma. The fact, however, that a person with mesothelioma was exposed to talcum powder asbestos does not establish a causal connection between the asbestos and the mesothelioma.

---

[39] *Id.* at 6-7.

[40] Ex. 17, Oct. 26, 2022, Hearing Transcript in *Smith*, at 70:5-71:4 ("I don't hear a reason to depart from this order. So let's move on.")

[41] There are ample grounds for Dr. Moline to be precluded in this action as well, and Mennen reserves the right to seek that relief once expert depositions are concluded. *See also Nemeth v. Brenntag North America*, 38 N.Y.3d 336 (2022) (precluding Dr. Moline as an expert on causation in talc matter). For present purposes, Mennen is seeking only to preclude Plaintiff from belatedly introducing the 2023 Article as reliance material for Dr. Moline and any other experts and Dr. Moline's dose assessment.

[42] Ex. 1, Order, *Weiss v. Albertson's Companies Inc.*, et al., CV 2021-090946 (Ariz. Super. Ct. June 23, 2023) at 23

*Id.* at 37.

Exclusion is likewise warranted here.  Dr. Moline admittedly did not independently verify the exposure allegations on which she relied for her papers; in fact the record shows that she falsely characterized Ms. Bell as having no identified exposure other than talcum powder, even though Ms. Bell worked for decades in asbestos-containing factories and filed worker's compensation claims based on her occupational exposures.  In no way can the Moline Papers be described as reasonable scientific reliance material.

**B.   Dr. Moline's Failure to Discuss Her Papers Deprives Defendants of Meaningful Cross-Examination**

It is well settled that a party's ability to effectively cross examine adverse witnesses is a critical element of Due Process. *Escalera v. New York City Hous. Auth.*, 425 F.2d 853, 862 (2d Cir. 1970) ("due process requires an opportunity to confront and cross-examine adverse witnesses.").  Mennen has been prevented from meaningfully challenging the reliability or methodology of the opinions in the Moline 2023 Article because Dr. Moline consistently refuses to disclose information about the cases upon which they are based.[43]  Because all of the underlying data has been kept secret—including from peer reviewers, co-authors, and defendants in the tort system—it is impossible to verify the claims made in the 2023 Paper.  The *Bell* Court explained how this unfairly prejudices defendants:

> In this case, a principal factual underpinning of the article is that in all thirty-three cases studied "no identified source apart from the talcum powder" was identified. . . . The absence of any specific information on the identities of the individuals studied precludes inquiry into the basis of the factual underpinning of no known exposure to asbestos other than talcum powder.

---

[43] Ex. 14, Moline Depo. (March 23, 2023)

*Bell v. Am. Int'l Indus.*, 627 F. Supp. 3d 520, 532 (M.D.N.C. 2022).  The court went on to explain, "From this court's perspective, inquiry into the accuracy of facts and assumptions underlying scientific merit is not only an appropriate inquiry, but also necessary and required." *Id.*  Dr. Moline has dodged that kind of inquiry.  Even co-author Dr. Frank has no idea what the basis is for the conclusions made in the 2023 Paper with respect to alternative exposure.[44]  Nor was he provided with any countervailing information from the defendants, such as defense expert reports.[45]  And even the exposure histories did not have complete information for his review, since any identifying information was redacted on Dr. Frank's copy. [46]

Moline's refusal to discuss the specifics of the individuals selected deprives Mennen of the opportunity to conduct a meaningful cross-examination, severely prejudicing Mennen and depriving it of due process.

### C.     Dr. Moline Lacks the Qualifications to Opine on Alleged Trace Contamination of Cosmetic Talc With Asbestos

Dr. Moline's 2023 Article also contains incompetent, and otherwise inadmissible, hearsay. It is axiomatic that an expert cannot testify outside the bounds of her expertise.  *See, e.g.*, *Baptiste v RLP-East, LLC*, 182 A.D.3d 444, 444 (1st Dept. 2020) (finding the trial court "erred in permitting plaintiff to call an accident reconstructionist to testify that his injuries were caused by the construction accident") (internal citations omitted); *Daum v. Auburn Mem. Hosp.*, 198 A.D.2d 899 (4th Dept. 1993) (finding because plaintiff's expert failed to set forth medical qualifications and, there was "no basis upon which to conclude that plaintiff's expert was qualified to render an expert opinion").  A core claim of the Moline Articles is that the individuals in the underlying cases were

---

[44] Ex. 14, Moline Depo. (March 23, 2023) at 94:13-20.
[45] Ex. 14, Moline Depo. (March 23, 2023) at 94:21-24.
[46] Ex. 14, Moline Depo. (March 23, 2023) at 95:15-21.

exposed to asbestos from cosmetic talcum powder; Dr. Moline, however, lacks the requisite qualifications to make that statement.

Dr. Moline has no expertise in mineralogy, geology, or any other field that would enable her to offer an expert opinion as to the mineral content of a talcum powder product.[47]   Accordingly, Dr. Moline's conclusions in the Moline 2023 Article as to the alleged contamination of talcum powder products rely wholly on the opinions of other individuals.   Dr. Moline relies on inadmissible hearsay sources, such as the 2014 article by Ronald Gordon entitled, *Asbestos in Commercial Cosmetic Talcum Powder as a Cause of Mesothelioma in Women*, 20 Int'l J. Occup. & Envtl. Health 318 (2014) (the "Article").   Allowing Plaintiff and his experts to present the Moline Article will allow them to backdoor the opinions of Dr. Gordon, a non-testifying expert whose opinions have been excluded by multiple courts.[48]   If Dr. Moline were to make such an assertion at trial, she would simply be parroting the opinions of other, non-testifying witnesses, which is impermissible.  *See Zakaria v. Gerber Prods. Co.,* (2017 C.D. Cal.) 2017 WL 9512587, at *7 ("An expert may not present testimony that merely 'parrots' the opinions of others, without providing an independent evaluation of the matters at issue.") (citing *Matter of James Wilson Assocs.*, (1992 7th Cir.) 965 F.2d 160, 172-73); *United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008) (The expert may not, however, simply transmit that hearsay to the jury as "repeating hearsay evidence without applying any expertise whatsoever," is a practice that allows "to circumvent the rules prohibiting hearsay.").

---

[48] *E.g.*, *Jackson v. Colgate-Palmolive Co.*, No. CV 15-01066 (TFH), 2019 WL 3603547, at *6 (D.D.C. Aug. 6, 2019); *Hanson v. Colgate-Palmolive Co.*, 353 F. Supp. 3d 1273, 1276 (S.D. Ga. 2018);  *Brandt v. The Bon-Ton Stores, Inc.*, 2017 WL 4271039, at *8–9 (Pa. Com. Pl. Sept. 25, 2017).

**D.      The Introduction of the 2023 Moline Article Paper at Trial Would Result In Undue Prejudice to Defendants**

Dr. Moline's 2023 Article should also be excluded as unfairly prejudicial to Defendants. Under Rule 403 of the Rules of Evidence, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." If Dr. Moline is permitted to testify about her 2023 Article, it would create a significant risk of jurors deciding this matter on an improper basis. For Defendants to effectively cross examine any expert concerning the Moline Paper, it would be necessary to elicit that Dr. Moline did not function as an impartial scientist who independently confirmed the asbestos exposures of her study "subjects," but instead wrote the article by accepting as true the allegations of 166 plaintiffs who hired her to support their claims in other cases against talcum powder defendants. But by revealing Dr. Moline's bias and unscientific methodology, Defendants would also be revealing that it has been sued by dozens of other people suffering from mesothelioma who blame their disease on their use of their respective products. And that would leave jurors with the impression that Plaintiff's claims here must be true, since multiple consumers have claimed the same injury.

It is elementary that a plaintiff cannot bolster their claims in one trial by revealing allegations by other plaintiffs in other cases against the same defendant. *See generally Matter of Brandon's Est.*, 55 N.Y.2d 206, 210–11, 433 N.E.2d 501, 503 (1982) ("A general rule of evidence, applicable in both civil and criminal cases, is that it is improper to prove that a person did an act on a particular occasion by showing that he did a similar act on a different, unrelated occasion."). But that is the exact improper effect that introduction of the Moline paper would have here.

III. **THE COURT SHOULD ALSO PRECLUDE DR. MOLINE'S LATE OFFERED DOSE ASSESSMENT AS AN UNTIMELY AND IMPROPER SUPPLEMENTATION**

Dr. Moline's Defendant-specific dose calculations should likewise be excluded as untimely.  Dr. Moline never offered a defendant-specific dose opinion in her initial report.  In fact, during the first day of her deposition, Dr. Moline affirmatively testified that she was not offering a dose opinion.  And while Dr. Moline purportedly performed the calculations a week before her second day of deposition, Plaintiff's counsel failed to disclose the new calculations prior to the deposition.  Indeed, the calculations were not disclosed until defendants' completed their questioning, and Plaintiff's counsel elicited them through a redirect, before promptly cutting off any further questioning, preventing any cross examination on the new opinions.

This is gamesmanship, pure and simple.  Dr. Moline was in possession of all the necessary information she relied upon for her dose calculations prior to preparing her initial report, as the scientific articles and Mr. Gref's deposition pre-date the report.  This is therefore not merely an effort to supplement an existing opinion with newly discovered evidence; it is an entirely new and untimely opinion, which is improper.  Courts routinely preclude experts from "supplementing" their report in analogous circumstances.  *See Stuhlmacher v. Home Depot USA, Inc.*, 2012 WL 5866297, at *3 (second report was a new opinion and not a supplemental report where "[t]he information on which [the expert] based his opinions was available prior to the defendants deposing him"); *Levinson v. Westport Nat'l Bank*, 2013 WL 3280013, at *5 (D.Conn.2013) ("[t]here is no evidence that the information [the expert] added was previously unknown or unavailable to him[;]"); *Cedar Pharm., Inc., v. Dongbu Hannong Chem. Co., Ltd.*, 769 F. Supp. 2d 269, 279 (S.D.N.Y. 2011) ([Courts] "will not admit supplemental expert evidence following the close of discovery when it expounds a wholly new and complex approach designed to fill a significant and logical gap in the first report, as doing so would eviscerate the purpose of the expert

disclosure rules").  As Plaintiffs have no substantial justification for their failure timely disclose Dr. Moline's exposure opinions, they should be precluded from supplementing her report now. *See Ventra v. United States,* 121 F.Supp.2d 326, 332 (S.D.N.Y. 2000) ("the purpose of [Rule 37(c)] is to prevent the practice of "sandbagging" an adversary with new evidence.").

Additionally, if this Court were to permit Plaintiff to disregard the deadlines for expert witness disclosures, the rest of the schedule laid out by the Court months in advance, and understood by the parties, including Plaintiff, would have to be altered as well to accommodate an additional deposition for Dr. Moline and potentially for the Defendant's experts to address Dr. Moline's new opinions.  This "[d]isruption to the schedule of the court and other parties in that manner is not harmless[.]"  *Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1062 (9th Cir. 2004). The exclusion of Dr. Moline's dose calculations is therefore necessary to prevent unfair surprise and improper delay that has precluded the Defendants from conducting meaningful expert discovery.

## IV. THIS COURT SHOULD PRECLUDE PLAINTIFF'S PREVIOUSLY UNDISCLOSED EXPERT OPINIONS AND REPORTS

Plaintiff's gamesmanship does not end with Dr. Moline.  On August 4, 2023, without leave of Court, Plaintiff disclosed "supplemental and/or amended" reports from Drs. William Longo, Mark Krekeler, and Arnold Brody.  All of Plaintiff's experts were deposed in 2022 based on Plaintiff's original disclosures.  Plaintiff's untimely reports should be stricken for failure to seek leave and show good cause.

### A.  Dr. William Longo

Without advising the Court or seeking leave to extend the expert disclosure deadlines that have long since expired, Plaintiff unilaterally took the procedurally improper opportunity to supplement his disclosures from his testing expert Dr. William Longo with testing that was not

previously disclosed in this matter.[49]  On July 5, 2023, this Court did not dispense with Plaintiff's obligations to adhere to this Court's March 2022 deadline for non-medical expert witness disclosures or the Federal Rules.

Plaintiff's initial Mennen-specific declaration from Dr. Longo only lists the Mennen report dated March 31, 2022 (Report no. M71518) as the sole testing report Dr. Longo would rely upon for his opinions.[50]  Plaintiff's counsel confirmed the same at the outset of Dr. Longo's deposition, stating that **"[Longo] will not be relying on any other Mennen testing other than M7518 (sic) for the Gref matter."[51]** Plaintiff has now added on an additional five reports as part of Dr. Longo's reliance materials more than 20 months after they were due.[52] Allowing Plaintiff at this late juncture to amend Dr. Longo's reliance material to include five new test reports would further delay expert discovery as Mennen should be entitled to a further deposition of Dr. Longo and potential supplementation of their own expert's reports.

Plaintiff cannot offer any substantial justification for delaying his supplementation and for failing to seek the Court's permission to file these late reports.  Accordingly, this Court should further preclude Plaintiff from relying on the previously undisclosed testing reports from Dr. Longo.

### B. Dr. Mark Krekeler

Similarly, Plaintiff previously argued that Dr. Krekeler's deposition and discovery concluded in December 2022.  In February 2023, however, Plaintiff obtained a supplemental 200-page report from Dr. Krekeler.  Plaintiff did not disclose his plan to supplement Dr. Krekeler's opinions with this new February report, thereby re-opening the witness for deposition, until August

---

[49] Ex. 10, Declaration of W. Longo, dated August 1, 2023.
[50] Ex. 9, Declaration of W. Longo, dated March 31, 2022.
[51] Ex. 11, Depo. Trans. W. Longo, Vol. I, p. 13.
[52] Ex. 9, Declaration of W. Longo, dated March 31, 2022.

4, 2023.  Plaintiff made no attempt to inform the parties of his intention to rely on this new report, nor did he seek leave of the Court to supplement Dr. Krekeler's opinions.

### C. Dr. Arnold Brody

When Plaintiff submitted Dr. Brody's December 19, 2022, letter (ECF #296) to the Court, Plaintiff was certainly already in possession of a new report from Dr. Brody dated November 14, 2022.  Plaintiff made no attempt to inform the parties of his intention to rely on this new report,[53] nor did he at any time seek leave of the Court to supplement Dr. Brody's opinions.  Despite being dated before his original disclosure, Plaintiff provides Dr. Brody's "new" report now.  It contains new and different material from what Dr. Brody has already been questioned about in this case.

### <u>CONCLUSION</u>

Defendants respectfully requests this Court exclude Dr. Moline's paper entitled "Exposure to cosmetic talc and mesothelioma" (2023) as well as any reliance thereon, Dr. Moline's dose assessment calculations, and Plaintiff's "supplemental" disclosures, and any such further relief as this Court deems just and proper.

Dated: September 7, 2023
      New York, NY

               **GORDON REES SCULLY MANSUKHANI LLP**

               Virginia Squitieri, Esq.
               One Battery Park Plaza, 28th Floor
               New York, NY 10004
               Tel. 212.269.5500
               vsquitieri@grsm.com
               *Attorneys for Defendant*
               *COLGATE-PALMOLIVE COMPANY,*
               *as a successor-in-interest to*
               *THE MENNEN COMPANY*

---

[53] Exhibit C of Dr. Brody's supplemental report includes several new paragraphs of information and new PowerPoint slides.

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**

  _/s/ Kirk Goza_
Kirk Goza, Esq.
1300 I Street NW
Suite 900
Washington, DC 20005
Tel.: 202.538.8169
kirkgoza@quinnemanuel.com
**Attorneys for Defendant
COLGATE-PALMOLIVE COMPANY,
as a successor-in-interest to
THE MENNEN COMPANY**

**GOLDBERG SEGALLA**

_David E. Rutkowski_
David E. Rutkowski, Esq.
1037 Raymond Boulevard
Suite 1010
Newark,  NJ 07102
Tel.: 973.681.7015
drutkowski@goldbergsegalla.com
**Attorneys for Defendants
THE PROCTER & GAMBLE
COMPANY and SHULTON INC.**

**LATHROP GPM LLP**

  _/s/ Robert Thackston_
Robert Thackston, Esq.
2101 Cedar Springs Road
Suite 1400
Dallas, TX  75201
Tel.: 469.983.6023
robert.thackston@lathropgpm.com
**Attorneys for Defendant
AMERICAN INTERNATIONAL
INDUSTRIES**