**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRIAN JOSEPH GREF, § § § Plaintiff, § § v. § § AMERICAN INTERNATIONAL § INDUSTRIES, individually and as § successor-in-interest for the CLUBMAN § BRAND, and to THE NESLEMUR § COMPANY and PINAUD COMPANY, et § al., § Defendants. § | Case No. 1:20-CV-05589-GBD |

**DEFENDANT AMERICAN INTERNATIONAL INDUSTRIES' OPPOSITION TO NORTHWELL'S MOTION FOR RULE 45 SANCTIONS**

Defendant American International Industries ("A-I-I"), by counsel, respectfully submits this Opposition to Northwell Health, Inc.'s ("Northwell") Motion for Rule 45 Sanctions (ECF No. 469).

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

MEMORANDUM OF LAW………………………………………………………………….1

I.    Question Presented .......................................................................................................... 1

II.    Summary of Argument .................................................................................................... 1

III.    Factual Background ........................................................................................................ 2

      A.    The Unveiling. ..................................................................................................... 4

      B.    Northwell's Participation in the Concealment. ......................................................... 7

IV.    Legal Argument ............................................................................................................... 8

      A.    There Was No Undue Burden to Northwell. ......................................................... 9

      B.    A-I-I's Efforts to Discover the Study Subjects, including Opposing Dismissal, Were Reasonable. ...................................................................................................... 10

CONCLUSION .................................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell v. American International Industries*,
   627 F.Supp.3d 520 (2022) ...................................................................................3, 4, 9, 10, 11

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993)................................................................................................................3

*Hughes v. Twenty-First Century Fox, Inc.*,
   330 F.R.D. 55 (S.D.N.Y. 2018) ..............................................................................................8

*Pecos River Talc LLC v. Emory, et al.*,
   Case No. 4:24-cv-00075 (E.D. Va. 2025)..........................................................................1, 11

*Pecos River Talc LLC v. Moline*,
   Case No. 3:23-cv-02990 (D.N.J. 2025) (ECF No. 47-1) ................................................4, 5, 6

**Rules**

Fed. R. Civ. Proc. 45......................................................................................................................8

Fed. R. Civ. Proc. 45(d) .................................................................................................................8

Fed. R. Evid. 702 ...........................................................................................................................3

**MEMORANDUM OF LAW**

I.  **Question Presented**

Should A-I-I be sanctioned for asking if Plaintiff Brian Gref was a participant in Moline's studies? No. Indeed, days after Northwell filed its motion, A-I-I learned that Plaintiff Brian Gref was a litigant of Moline 2023. This is information that should have been disclosed years ago. At this point, the only appropriate outcome is for Northwell to withdraw its request for fees and costs.

II.  **Summary of Argument**

Since 2020, Plaintiff's causation expert and employee of Northwell has peddled her novel "scientific studies" claiming to identify a group of people that developed mesothelioma exclusively from exposure to cosmetic talc. Every attempt by A-I-I to confirm the factual representations supporting these studies, which are the lynchpin of Plaintiff's claims, has been attacked by Plaintiff's counsel, the expert, and her employer—for the sole purpose of concealing what is now known to be flawed data.

A-I-I was justified in seeking the identity of Moline's subjects. Indeed, on April 22, 2025, A-I-I learned that this very litigant (Mr. Gref) was one of the plaintiffs in Moline's studies.[1] Privy to this information all along, Northwell stonewalled discovery at every turn—and Plaintiff's counsel employed every maneuver, including the illusory "withdrawal of reliance" on the Moline articles—to avoid the revelation. Now we know why. Many of the plaintiffs, including Mr. Gref, were exposed to asbestos from sources other than cosmetic talc. Some did not have mesothelioma at all.

Northwell is not the prevailing party in this disturbing situation. Its motion should be denied for the following reasons:

---

[1] *See* Motion for Summary Judgment and Exhibit AB in *Pecos River Talc LLC v. Emory, et al.*, Case No. 4:24-cv-00075 (E.D. Va. 2025) (ECF Nos. 45, 46-28), attached as **Exhibit A.**

1

(1) <u>Relevance</u>: A-I-I was always entitled to discover that Mr. Gref was a participant in Moline's studies. This revelation renders the positions Northwell has taken frivolous and the costs it incurred unnecessary.

(2) <u>No Undue Burden</u>: Northwell argues that the relevant facts are "different and more aggravated" than they were years ago. Unquestionably. Northwell could have identified Mr. Gref as a participant of Moline's studies when A-I-I's subpoenas issued. The "burden" of concealment was one created by Northwell itself.

(3) <u>Fraud</u>: In combination with Plaintiff's counsel and Moline, Northwell fought disclosure of this information solely to perpetuate the fraud that cosmetic talc litigation is built upon. Although it made this Court an unknowing participant in the cover-up, Northwell's motion provides an opportunity to course correct.

A-I-I accordingly requests that the Court (i) strike Northwell's motion, and (ii) permit A-I-I to file a bill of costs for the time and expense it was forced to incur rightfully seeking to discover the bases for Moline's two studies purporting to "identify cosmetic talcum powder contaminated with asbestos as the cause of malignant mesothelioma in cosmetic talc users."

## III.   Factual Background

Dr. Jacqueline Moline's 2020 article, *Mesothelioma Associated With The Use Of Cosmetic Talc* ("Moline 2020"), refers to the cases of 33 plaintiffs who had malignant mesothelioma and "whose only known [asbestos] exposure was cosmetic talc."[2] Moline claims she reached this conclusion through a review of litigants' "exposure data" to determine "potential asbestos exposures" as well as the individual litigants' medical history.[3] She also claims to have considered

---

[2] Jacqueline Moline et al., *Mesothelioma Associated With The Use Of Cosmetic Talc,* JOEM, Jan. 2020, attached as **Exhibit B**.
[3] *Id* at p. 11.

2

"other potential exposures to asbestos," but found there were "no identified source[s] apart from the talcum powder."[4] Moline supposedly reviewed all cases for "potential" exposures from several areas including occupational sources, hobbies, "possible environmental exposures," and "any other potential sources of asbestos exposures."[5] Likewise, in her 2023 article, *Exposure To Cosmetic Talc And Mesothelioma* ("Moline 2023"), Moline claims "the only known exposure to asbestos was from cosmetic talc" for 122 out of the 166 plaintiffs' cases that were reviewed.[6]

"[I]nquiry into the accuracy of facts and assumptions underlying scientific merit is not only an appropriate inquiry, but also necessary and required." *Bell v. American International Industries*, 627 F.Supp.3d 520, 532 (2022). The overarching subject of Federal Rule of Evidence 702 is the scientific validity and, thus, the evidentiary relevance and reliability of the principles that underlie a proposed submission. *Id.* at 532 (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 594-95 (1993)). As the *Bell* court previously explained:

> "[A] principal factual underpinning of [Moline 2020] is that in all thirty-three cases studied 'no identified source [of asbestos] apart from the talcum powder' was identified. The absence of any specific information on the identities of the individuals studied precludes inquiry into the basis of the factual underpinning of no known exposure to asbestos other than talcum powder. The ability to "challenge the article's fundamental premise that none of the thirty-three individuals had any known alternative asbestos exposures" … "is a valid purpose, especially given the groundbreaking nature and widespread influence of the article. … [A]t a minimum, defendants in cosmetic talc cases deserve a fair opportunity to explore the weight to be assigned to Dr. Moline's facts and conclusions—an opportunity not previously available due to the absence of information stemming from the previous cloak of anonymity."

*Bell* at 532.

---

[4] *Id*.
[5] *Id*.
[6] Jacqueline Moline et al., *Exposure To Cosmetic Talc And Mesothelioma*, J Occup. Med. Toxicol, Jan. 2023, attached as **Exhibit C**.

3

Northwell does not deserve costs and fees for resisting A-I-I's valid inquiry into the accuracy of the factual underpinnings of Moline's studies. Although it succeeded in delaying discovery of the identities of Moline's subjects in *Gref*, the cloak has now been unveiled. Northwell's motion should accordingly be denied.

### A.     The Unveiling.

In her role as a compensated expert for the plaintiffs in cosmetic talc litigation, Moline knew her study subjects were exposed to asbestos from sources other than talcum powder. Yet, for years, Northwell engaged in a concerted effort with Moline to obfuscate the fraudulent nature of her articles by concealing the identities of her study subjects and, thereby, thwarting any scrutiny of their alternative exposures and their medical diagnoses.

<u>Moline 2020</u>

Just last month, Johnson & Johnson secured—by subpoena issued by the New Jersey state court to Northwell and enforced, over Northwell's repeated objections, by the highest state court in New York—a document identifying Moline's subjects (the "Key").[7] The Key proves that the statements in Moline 2020 are false and that her studies are nothing more than made-for-litigation attempts to distort the literature with something posing as "science" to support the plaintiff bar's tort claims in talc litigation. *Id*.

The Key confirms that numerous plaintiffs previously suspected as subjects of Moline 2020—Betty Bell (which we knew about), Helene Kohr, Stephen Lanzo, Doris Jackson, and Valeria Dalis—are, in fact, all subjects of the study. And, contrary to the claims of Moline 2020, all were exposed to asbestos from sources other than cosmetic talc:

- Betty Bell filed workers' compensation claims swearing that she was exposed to asbestos during her employment with two textile manufacturers.

---

[7] *See* Motion for Relief from Judgment and to File Amended Complaint, *Pecos River Talc LLC v. Moline*, Case No. 3:23-cv-02990 (D.N.J. 2025) (ECF No. 47-1), attached as **Exhibit D**.

- Helene Kohr smoked asbestos-laden cigarettes, and Moline stated in her expert report that Ms. Kohr was exposed to asbestos that way.

- Stephen Lanzo's basement had 60 linear feet of exposed asbestos pipe; his schools had hundreds of bags of asbestos removed after he left; and his tissue had a type of asbestos not even alleged to be present in cosmetic talc.

- Doris Jackson's medical records note that she was exposed to "[c]eiling pipes with degrading insulation" during her more than 30-year career as a public-school teacher.

- Valeria Dalis sought compensation for a non-talc exposure by filing a claim for $450,000 from the Manville Personal Injury Settlement Trust (Johns Manville made asbestos insulation).[8]

In Moline 2020 and in her sworn testimony, Moline stated that litigants with even a "potential exposure" would be excluded from the study. Nevertheless, defendants have now uncovered numerous additional subjects who were exposed to asbestos from sources other than cosmetic talc:

- Carol Schoeniger lived in a home where joint compound was applied and sanded, which Moline's own expert report describes as a "potential exposure" to asbestos.

- Edward Garcia worked at Eastern Molding, which Moline's own expert report describes as a source of "potential exposure" to asbestos.

- Sharon Hanson did the laundry for her husband who worked as an engineer in an area where raw asbestos was handled, which Moline herself testified represented a "potential exposure" to asbestos.

- Mary Anne Caine's complaint alleges exposure to asbestos brought home from her husband's job.

- Kayla Martinez's medical records state: "Her father worked at a company with known asbestos exposure and held her in his work clothes as a child."

- Barbara Arend's medical records state: "Barbara denies any asbestos exposure other than the possibility of asbestos presence in the house where she grew up as a child (apparently this was an old house that might have had asbestos shingles)."

---

[8] *Id.* at 3-4.

- Irma Verdolotti's father was a steamfitter who worked with insulation, and Ms. Verdolotti shared a room with her sister while the sister worked in a shipyard during World War II (and brought her work clothes home).

- Blondia Clemons' father worked as a mechanic at the family home performing two to three brake jobs a day (brakes contained asbestos).[9]

The vast number of individuals with non-talc exposures—including multiple examples where Moline herself acknowledged the potential alternative exposure—demonstrates that the premise of Moline 2020 is false. Regardless of whether Moline intended to rely on the study for her testimony in *Gref*, the fact that Plaintiff's expert placed fraudulent information in a peer-reviewed journal for the medical and scientific community (as well as the public) is relevant and discoverable.

Moline 2023

Like Moline 2020, Moline 2023 purports to prove that asbestos-contaminated talcum powder causes malignant mesothelioma. The Key has revealed numerous plaintiffs that were included in Moline 2023 despite demonstrable alternative exposure, but it has also revealed that certain plaintiffs simply did *not* have mesothelioma. Similar to those with alternative exposure, the subjects with disputed diagnoses should have been excluded from Moline's work.

- Brian Gref – Mr. Gref told his treating doctors that he was exposed to asbestos from his father's work in the U.S. Navy.[10] A-I-I reasonably suspected that Mr. Gref was a subject of Moline 2023, but Northwell effectively hid this vital information through the pendency of the case. Days after Northwell filed this motion, A-I-I's suspicion was confirmed when the Key was released on April 22, 2025.[11]

- Sylvia Gibson – Ms. Gibson alleged exposure to building products made with Union Carbide asbestos fibers, which she used to ground her suit in Texas.[12] There, Moline admitted the exposure to "non-talc" asbestos in her expert report.[13]

---

[9] *Id.* at 4-5.
[10] *See* Med. Recs., attached as **Exhibit E**.
[11] *See* **Exh. A**.
[12] *See* Plaintiff's Opposition to Motion to Transfer in *Gibson*, attached as **Exhibit F.**
[13] *See* Moline Expert Report in *Gibson*, attached as **Exhibit G**, at 8.

- Sandra Reichart – Wrongful death action with a differential diagnosis. "Metastatic lung cancer" was reported as the cause of death on Ms. Reichart's death certificate, which was attached to her complaint and is data Moline purportedly reviewed for the studies.[14]

- Timothy Moon – 33-year-old male with a differential diagnosis in the medical records, which again is data Moline purportedly reviewed for her studies. Mr. Moon had heavy radiation exposure during treatment for neuroblastoma as a 15-month-old. His death certificate reports the cause of death as "metastasis lung cancer mesothelioma."[15]

The unveiling of these names proves what A-I-I suspected all along: Plaintiff and Northwell were acting in bad faith to conceal the falsity of Moline's studies and that Mr. Gref was one of Moline's subjects.

### B. Northwell's Participation in the Concealment.

Counsel for Northwell argued to this Court that he had no evidence relevant to *Gref* and that, to even look, would be unduly burdensome. All the while, counsel knew Mr. Gref was one of subjects of Moline 2023 and that his medical information was the very subject of this lawsuit (thus, not subject to any confidentiality protections).[16] Plaintiff's counsel echoed these sentiments, claiming that Moline's articles were irrelevant to *Gref* when Mr. Gref was one of the study participants. Neither attorney was candid with the Court or opposing counsel.[17]

When Plaintiff's experts were relying on Moline's articles to opine that cosmetic talc caused Mr. Gref's mesothelioma, it was certainly relevant that *Gref* was one of the lawsuits on which those studies were supposedly based.[18] Plaintiff's "withdrawal" of reliance was only a representation that Moline would not testify about the study on direct examination. There was no promise that she would not mention it on cross-examination. Nor that Plaintiff's other experts would not rely on the study. Additionally, it was discoverable that Plaintiff's experts' arguments

---

[14] *See* Reichart Death Certificate, attached as **Exhibit H.**
[15] *See*, Moon Death Certificate, attached as **Exhibit I.**
[16] *See* Hearing Transcript, May 19, 2023, at 26, attached as **Exhibit J**.
[17] *See* ABA Model Rule of Professional Conduct 3.3, Rule of Candor.
[18] **Exh. J**.

7

were circular. Plaintiff's experts' use of Moline's studies as "independent scientific evidence" supporting the claim that Mr. Gref's mesothelioma was caused by cosmetic talc when, in fact, Mr. Gref himself was a study participant is circular reasoning. Likewise, there was—and is—no good faith argument that HIPAA applies to Mr. Gref when he executed authorizations for the disclosure of his confidential medical information in his lawsuit over mesothelioma.[19] Indeed, although never his health care provider, Moline authored—and Plaintiff disclosed—a medical report with the intimate details of Mr. Gref's medical history in this case.

Northwell seeks to detract from its extraordinary role in trying to hide unreliable litigation and rewrite history. Its numerous protests and roadblocks to A-I-I's valid subpoenas,[20] which is why it incurred the fees and costs it is now seeking, is not attributable to A-I-I. All Northwell had to do was disclose the identities of Moline's study subjects. If it had simply done that, this motion for sanctions—and the years of litigation over A-I-I's rightful discovery—would have been avoidable.

## IV.    Legal Argument

Federal Rule of Civil Procedure 45 permits subpoenas to non-parties for documents and deposition testimony. *See* Fed. R. Civ. P. 45. Rule 45(d) protects the non-party from undue burden or expense (through sanctions) when a party fails to take reasonable steps to avoid imposing undue burden or expense. Whether a subpoena imposes an undue burden depends on "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden

---

[19] Gref Medical Authorizations, attached as **Exhibit K.**
[20] "The lady doth protest too much, methnks." (Shakespeare, Hamlet, Act iii, Scene II).

imposed." *Hughes v. Twenty-First Century Fox, Inc.*, 330 F.R.D. 55, 57 (S.D.N.Y. 2018) (citations omitted).

### A.   There Was No Undue Burden to Northwell.

Northwell claims that A-I-I's subpoena imposed an undue burden because A-I-I continued to request a list of litigation cases after Plaintiff offered a voluntary dismissal. A-I-I was well within its rights to continue to try to uncover the fact that the whole premise under which it was sued was false and propped up by litigation-driven articles from Moline and Northwell. By choosing to help Moline conceal litigation cases on which she claimed to base articles she used to profit as an expert witness, any burden was of Northwell's own creation. Northwell did not have to allow Moline to put litigation case materials on its server. These materials had nothing to do with the provision of medical services.

Additionally, A-I-I only sought two lists of lawsuits. It knew there was a spreadsheet of case names because Northwell produced a redacted version of the spreadsheet in *Bell*. See *Bell v. American International Industries*, 627 F.Supp.3d 520 (2022). The information A-I-I subpoenaed was merely the names of publicly-available lawsuits. These names are not protected by patient privilege or HIPAA. Not only are the plaintiffs' identities as individuals with mesothelioma already in the public record, but Moline's studies are a creation of the litigation itself. Moline 2020 and Moline 2023 are based on a review of litigation records as part of Moline's work as an expert witness for the plaintiffs. Moline did not provide medical treatment to any of these individuals.

A-I-I subpoenaed this information so that it could adequately scrutinize Moline's studies, which are used as the basis for the alleged link between talc and mesothelioma. As detailed above, there are numerous confirmed instances of Moline's study subjects having alternative non-talc

9

asbestos exposure (despite Moline's claims that she and her co-authors evaluated all sources of exposure to confirm no such alternative exposure).

Rather than simply disclosing the names, Plaintiff and Northwell claimed to "withdraw reliance" on Moline's articles and went so far as to dismiss the entire lawsuit—with prejudice—just to avoid producing the list. Plaintiff's proposal to "withdraw reliance," however, was nothing more than a ploy to evade discovery. It did not come with a promise not to mention Moline's studies at all—it was only that Plaintiff would not bring them up first on direct examination.

Mr. Gref being revealed as one of Moline's subjects confirms what A-I-I has been arguing all along: Northwell and Plaintiff are engaging in gamesmanship by peddling false science and retreating at the last second. This is the reason A-I-I opposed dismissal of the case (as it involves frivolous claims backed by frivolous science). Numerous study subjects were shown to have extensive exposure to asbestos unrelated to cosmetic talc. Some were even shown to have diagnoses other than mesothelioma.

Importantly, Northwell has *not* won a motion related to Moline 2023 in this case. The Court's ruling only addressed Moline 2020 after Plaintiff claimed to withdraw reliance. Plaintiff's and Northwell's efforts to introduce junk science into the courts and then walk it back as soon as they are at risk of being exposed should not be incentivized with an award of costs and fees. Accordingly, because A-I-I merely sought two lists of names that were highly relevant to this lawsuit, there was no undue burden to Northwell. Any "burden" was the result of Northwell's own attempt to cover up the falsities it has been spreading.

    **B.    A-I-I's Efforts to Discover the Study Subjects, including Opposing Dismissal, Were Reasonable.**

First was the *Betty Bell* case. Moline claimed that Ms. Bell had never been exposed to asbestos but from cosmetic talc. Ms. Bell and her husband, however, filed two workers'

compensation cases alleging occupational exposure to asbestos at a textile mill where Ms. Bell worked for two decades. See *Bell v. Am. Int'l Indus.,* 627 F. Supp. 3d 520 (M.D.N.C. 2022). The *Bell* court rejected all of plaintiffs' and Northwell's arguments—the same ones put forth here— and expressed concern with the contradiction between Ms. Bell's workers' compensation claims and Moline's assertions that she had no known alternative asbestos exposure. *Id.* at 530. *Bell* noted that, "at a minimum, defendants in cosmetic talc cases deserve a fair opportunity to explore the weight to be assigned to Dr. Moline's facts and conclusions – an opportunity not previously available due the absence of information stemming from the previous cloak of anonymity." *Id.* at 532.

Next, on April 22, 2025, the list subpoenaed by A-I-I in this case was released in a federal case pending in the Eastern District of Virginia, which revealed the names of the subjects of Moline 2023. *Pecos River Talc LLC v. Emory, et al.*, Case No. 4:24-cv-00075 (E.D. Va. 2025). LLT Management – predecessor to Pecos River – filed this lawsuit against a trio of medical experts including Dr. Emory who, like Moline, published a study linking cosmetic talc exposure to mesothelioma where the study subjects were alleged to have no non-talc asbestos exposure. LLT's suit alleges trade libel and claims that two statements in particular were knowingly or recklessly false: 1) that the study subjects' only exposure to asbestos was cosmetic talc; and 2) that the 75 subjects were not the same as the 33 subjects of Moline 2020. In *Pecos River*, LLT seeks to compel the list of subjects in Emory's study:

> LLT plausibly alleges that the defendants' intended and actual audience was the plaintiffs' bar, rather than the scientific community. . .
>
> . . . At this stage, LLT has done enough by plausibly alleging that "sales volume and profits from Johnson's Baby Powder declined" during the year the defendants' article was published and that the company had to withdraw its product from the

>market "due in large part to changes in consumer habits [] fueled by misinformation around the safety of the product," of which the defendants' article was a part.[21]

Because Emory's study is interrelated with Moline's studies, LLT filed and made publicly available the list of plaintiffs in Moline 2020 and Moline 2023.

It is now even more apparent why Northwell and Plaintiff fought so hard to keep from releasing the list in *Gref*—going so far as to dismiss a years-long case with prejudice—as it was all false, and they were trying to keep their theory (and profit source) alive. Northwell and Plaintiff have misused medical privileges to conceal this falsity and mislead both the general public and the courts, taking a "just trust us" approach when pressed on the science. Discovery is the only way defendants harmed by these studies can uncover the deception, while Northwell and plaintiffs make it as difficult and expensive as possible to do so. Asking the Court to award sanctions is just another way to try to intimidate defendants who are being harmed by Moline's articles from daring to challenge them. Defendants like A-I-I are stuck with significant legal bills for defending themselves against claims based on demonstrably false studies, and then Northwell has the temerity to seek costs and fees to award them for their deceit.

All the above are reasons A-I-I fought dismissal of this lawsuit—without any opposition filed by Northwell.[22] In the Court's order granting Plaintiff's motion to dismiss, it noted that A-I-I lacked evidence for its claims of Plaintiff's bad faith. Now that it is clear Northwell and Plaintiff were knowingly concealing Mr. Gref's inclusion in Moline 2023 and deliberately stalling until they could achieve dismissal, the bad faith is evident. Northwell was not concerned about patient confidentiality or researcher privilege; it was concerned with being exposed, so it fought the disclosure of a mere list of names. Northwell's unwarranted defense and delay has caused A-I-I to

---

[21] *See Pecos River Talc LLC v. Emory, et al.*, Case No. 4:24-cv-00075 (E.D. Va. 2025), Order (ECF No. 27), at 18, 32-33, attached as **Exhibit L**.
[22] *See* ECF #456.

incur significant costs in pursuing what should have been readily available information. The Court should accordingly deny Northwell's motion and assess fees against Northwell for its deceitful actions.

## CONCLUSION

On April 22, 2025, A-I-I confirmed what it had long suspected: Brian Gref was one of the subjects of Moline 2023. This was precisely why A-I-I sought discovery—to determine whether Mr. Gref was a study participant and to defend itself accordingly. The central question for the Court is whether A-I-I should be sanctioned for attempting to uncover that connection. The answer is clearly no.

A-I-I is entitled to basic information necessary to defend itself, particularly when it concerns the foundation of the entire cosmetic talc litigation. Plaintiff's use of Moline's studies as "independent scientific evidence" supporting the claim that Mr. Gref's mesothelioma was caused by talcum powder when, in fact, Mr. Gref himself was a study participant is circular reasoning. It is not science. Northwell has allowed the weaponization of scientific literature as evidentiary support when, in fact, Moline is merely recycling the same data through an academic veneer. Northwell has assisted Moline in turning science into advocacy, which undermines the integrity of expert testimony and civil litigation. A-I-I should not be sanctioned for trying to bring the truth to light.

/ / /

/ / /

/ / /

/ / /

/ / /

For the foregoing reasons, A-I-I respectfully suggests that the Court strike Northwell's motion for sanctions, award A-I-I its recoverable litigation costs, and grant such other relief as the Court deems just and proper.

Respectfully submitted this 5th day of May, 2025.

>  */s/ Robert E. Thackston*
> Robert E. Thackston (*pro hac vice*)
> **NELSON MULLINS RILEY & SCARBOROUGH, LLP**
> 3333 Lee Parkway, Suite 750
> Dallas, Texas 75219
> Telephone:  469-484-6100
> Facsimile:  469-828-7217
> robert.thackston@nelsonmullins.com
> *Attorneys for Defendant American International Industries*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 5th day of May, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all parties.

*/s/ Robert E. Thackston*
Robert E. Thackston
