

**NELSON MULLINS RILEY & SCARBOROUGH LLP**
ATTORNEYS AND COUNSELORS AT LAW

Robert E. Thackston
T: 469.484.4790
robert.thackston@nelsonmullins.com

3333 Lee Parkway, Suite 750
Dallas, TX 75219
T: 469.484.6100  F: 469.828.7217
nelsonmullins.com

October 23, 2025

*VIA ECF*
The Honorable Valerie Figueredo
Daniel Patrick Moynihan
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

   Re: Brian Joseph Gref v. American International Industries, et al. - Case No. 1:20-cv-05589-GBD-VF

Dear Judge Figueredo,

  Northwell Health, Inc.'s ("Northwell") October 21, 2025, letter relates to its request for attorneys' fees as discovery sanctions in connection with American International Industries' ("A-I-I") subpoena seeking limited third-party discovery from Northwell regarding studies published by its employee, Dr. Jacqueline Moline ("Moline"). Since the filing of that motion (and subsequent orders), three additional orders have issued, which further demonstrate the propriety of A-I-I's subpoena and the reasonableness of A-I-I's position.

  **1. Emory decision**

  Attached as **Exhibit A** is the Eastern District of Virginia's decision in *Pecos River Talc LLC v. Emory*, No. 4:24-cv-00075-JKW-RJK (E.D. Va. July 8, 2025). *Pecos River v. Emory* is trade-libel action against three plaintiff-side experts—Drs. Theresa Emory, John Maddox, and Richard Kradin—who, like Moline, published a paper purporting to identify mesothelioma cases "whose only known exposure to asbestos was cosmetic talc." The issue before the court was whether the identities of the 75 subjects described in the "Emory Article" were discoverable. The order also discusses the potential overlap between the Emory Article subjects and the Moline subjects.

October 23, 2025
Page 2

Judge Robert Krask found that the identities were plainly relevant, proportional, and not privileged, and granted Pecos River's motion to compel disclosure of the names and related litigation materials. The court stated:

- The names were necessary to test the veracity of the "only known exposure" and "additional subjects" statements, which parallel the representations made in the Moline studies;

- The subjects' information originated from litigation files—not from confidential medical research—and thus raised no HIPAA or research-ethics bar; and

- A protective order would adequately address any privacy concerns as the interest in verifying scientific claims outweighed speculative concerns about chilling research.

The Emory decision directly reinforces A-I-I's position that its subpoena to Northwell—seeking limited, targeted information about the individuals referenced in Moline's publications—was both proper and necessary to evaluate the accuracy of those studies. The Eastern District of Virginia's analysis confirms that (i) such discovery is squarely within the scope of Rule 26, (ii) privacy and research-ethics objections do not preclude disclosure where data originated in litigation files, and (iii) production can occur under an appropriate protective order.

The Emory decision demonstrates that the precise discovery A-I-I sought is not only permissible but essential to ensuring transparency and reliability in litigation-related publications.

**2. Moline decision**

On October 10, 2025, the Southern District of New York issued an opinion in *Dr. Jacqueline Miriam Moline v. Pecos River Talc LLC*, No. 25-Misc-391 (PAE) (S.D.N.Y. Oct. 10, 2025), which is attached as **Exhibit B**.

Judge Paul A. Engelmayer denied Moline's motion to quash a subpoena served by Pecos River in the Eastern District of Virginia proceeding (*Pecos River Talc LLC v. Emory*, No. 4:24-cv-00075-JKW-RJK). He found Pecos River had presented evidence "strongly indicating" that Dr. Moline and Dr. Emory coordinated about the subject matter of their respective articles, and that Dr. Moline's deposition testimony denying such communications was contradicted by contemporaneous emails. The court concluded that, in light of the documentary record, which appears inconsistent with Dr. Moline's sworn testimony, it is fair and appropriate for Pecos River to explore these matters further at a deposition.

Judge Engelmayer specifically rejected Moline's arguments that the subpoena was harassing, burdensome, or protected by privilege. The court held that Dr. Moline's role as a long-standing paid expert witness in talc litigation "for more than 25 years" undermines her claim that responding to a narrowly drawn subpoena would burden her. Further, the discovery already

October 23, 2025
Page 3

obtained showed emails between Drs. Moline and Emory in February 2020 regarding possible overlap between their case series, directly contradicting Moline's deposition denials of contact.

Both decisions recognize that discovery into the factual underpinnings of the Moline and Emory studies—including patient identities, coordination, and overlap—is proper, relevant, and not privileged.

### 3. NYCAL decision

A third opinion, attached as **Exhibit C**, issued on October 16, 2025, by Special Master Philip Goldstein in the New York City Asbestos Litigation ("NYCAL"). This decision likewise confirms the legitimacy of subpoenas seeking information from Northwell about Moline's 2020 and 2023 talc–mesothelioma publications. In a detailed Recommended Ruling, Special Master Goldstein granted Colgate-Palmolive Company's motion to compel Northwell to comply with its subpoena duces tecum and rejected Northwell's repeated attempts to resist disclosure of the study participant data and the "keys" linking subjects' identities to the Moline articles.

The NYCAL decision recounts the procedural history of overlapping subpoenas served by both Johnson & Johnson and Colgate, each seeking identical material from Northwell concerning Moline's studies. It notes that the First Department's October 8, 2024, decision in *Johnson & Johnson v. Northwell Health*, Inc., 231 A.D.3d 481 (1st Dep't 2024), already held that such material was not protected by HIPAA or the Common Rule because the studies qualified as "secondary research based on publicly available identifiable information or biospecimens." The Court of Appeals denied review, leaving that decision undisturbed.

Finding that Northwell was attempting to "relitigate identical issues" already decided by the appellate court, Special Master Goldstein applied collateral estoppel to compel compliance with the Colgate subpoena. He explained that the Colgate and J&J subpoenas were substantively identical, both seeking the same information necessary to verify the accuracy of Moline's published representations about her study participants. Goldstein emphasized that the First Department had already rejected Northwell's privacy and burdensomeness objections and that "production of the information sought by the subpoenas would not be unduly burdensome, nor is it likely to have a chilling effect on future medical research. The subject information consists of just a few pages, is easily located, does not concern ongoing research, and does not reveal the unpublished thought processes of the researchers."

Taken together, the rulings from the Eastern District of Virginia, the Southern District of New York, and the New York City Asbestos Litigation demonstrate that Northwell's continued resistance to subpoenas concerning Moline's studies has been consistently rejected across multiple jurisdictions. These three decisions collectively show that A-I-I's subpoena was neither improper nor sanctionable. It mirrors subpoenas that have been repeatedly upheld as valid, necessary, and narrowly tailored to test the veracity of litigation-related scientific claims.

October 23, 2025
Page 4

                                      Sincerely,

                                      Robert E. Thackston

RET/tls
Attachments
cc:  All Parties of Record (via ECF)

4906-9996-3765 v.1